[L. A. No. 2725. Department Two.—January 30, 1912.]

## A. MAJORS, Respondent, v. M. W. CONNOR and CONNOR & PERRY INVESTMENT COMPANY (a Corporation), Appellants.

NEGLIGENCE—MASTER AND SERVANT—INDEPENDENT CONTRACTOR—FALLING WALL.—In an action by a brickmason to recover damages for personal injuries occasioned by the falling of a wall in course of construction, upon which he was working at the time of the accident, such fall being due to the collapse of faultily constructed sustaining piers, it is held, that the evidence was sufficient to justify the jury in concluding that the plaintiff was not an independent contractor, but was a servant of the defendants, within the meaning of section 2009 of the Civil Code.

ID.—FELLOW-SERVANTS—NEGLIGENCE IN FAILING TO PROVIDE SAFE PLACE TO WORK.—In such action, where the plaintiff had nothing to do with the construction of the supporting piers, and was unaware of the method used in building them, the employer cannot escape liability on the ground that the injury was caused by the carelessness of a fellow-servant. The place upon the wall where the plaintiff was working at the time of the accident being unsafe, the negligence arising by reason of furnishing such a perilous place for the workman is chargeable directly to the master, even though the latter was without actual knowledge of the danger.

ID.—FAILURE OF SERVANT TO INVESTIGATE CONDITIONS OF SAFETY.—Such a workman was not guilty of contributory negligence in failing to observe the faulty condition of the piers. If he was actually ignorant of the existing conditions he was under no obligation to investigate.

ID.—EVIDENCE—CONTROL AND MANAGEMENT OF WORKMEN.—In such an action, questions asked the plaintiff and other witnesses, designed to show under whose control and management the men engaged upon the work were, were proper, and did not call for the conclusions of the witnesses.

Id.—Instructions as to Manner of doing Work.—The plaintiff may also be asked whether he gave the man who built such piers any *instructions how to build them.* Such question calls for a fact, tending to support the plaintiff's theory that under his contract of employment he was a servant and not an independent contractor.

Id.—Effect of Injury on Working Capacity of Plaintiff—Evidence of Son—Expert Evidence.—The son of the injured mason, who was himself a mason and had worked with him before and since the accident, is qualified, both as an expert and as an intimate acquaintance, to testify as to the amount of work which his father could do at his trade after the accident as compared with that which he could accomplish before.

Id.—Redirect Examination—Discretion.—It is within the discretion of the trial court to permit questions to be asked on redirect examination that are not strictly proper redirect examination.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order refusing a new trial. Walter Bordwell, Judge.

The facts are stated in the opinion of the court.

J. Wiseman Macdonald, for Appellants.

H. T. Gordon, A. P. Thomson, and F. McD. Spencer, and Thomson & Spencer, for Respondent.

MELVIN, J.—Plaintiff was injured by the falling of a brick wall in course of construction, upon which he was working at the time as a mason. The wall in question was a part of an addition to the Hotel Melrose in Los Angeles, and its fall was due to the collapse of faultily constructed piers on the north half of said addition. The Connor & Perry Investment Company was sued as the contractor, and defendant Connor as manager of said company. A verdict in favor of Majors, the plaintiff, for twelve hundred and fifty dollars was returned by the jury, and judgment was entered accordingly. From said judgment and from an order denying their motion for a new trial defendants appeal.

Two general propositions are stated by appellants as bases of their argument on this appeal. One is that the evidence without question proved plaintiff to be an independent contractor. The other is that if he was not an independent

contractor, then his injuries were due to the negligence of his fellow-servants.

Regarding the terms upon which Majors was to work there was a conflict of evidence. . It is not disputed that he was to employ the men to assist him in the brick work, and was to furnish the tools, wheelbarrows, mixing bins, and other things necessary for the use of the bricklayers and was to be paid a certain sum per thousand bricks laid as compensation for himself and his assistants. Nor is there any question that the materials used in the construction of the addition to the hotel were to be furnished by the defendant and that the bricklayers and laborers hired by Majors were to be actually paid by defendants from amounts due Majors under the contract. There is a sharp conflict, however, in the testimony of the witnesses who spoke with reference to the authority to direct the work. Connors said that he reserved no right of supervision nor dictation of the manner in which the work was to be done. He had a foreman named Crow whose duty, he said, was merely to see that Majors followed the proper lines in laying the foundations and erected the piers of the size and at the places indicated in the specifications. Plaintiff testified, however, that as a part of his agreement he was to do whatever Crow told him to do. At least three of the men employed on the building testified that they were working not under the supervision of Majors but were directed in their labors by either Crow or Connor. Majors also said that he worked under the directions of Connor or Crow. There was abundant evidence therefore to justify the jury in concluding that Majors did not occupy the position of an independent contractor, but that he was a servant, as that term is defined in section 2009 of the Civil Code. As counsel for respondent phrase it, "This was one of those simple work contracts often favored by close figuring owners who do their own building. . . . They adopt the device of buying so much labor in gross from a single workman, the latter taking the chance of thereby making a slight increase in his own day's wages." Even if the agreement as originally made could be considered as one whereby Majors became an independent contractor, nevertheless, Connor by assuming to direct the work either personally or through his foreman, took the responsibility upon himself and his co-defendant which might have rested otherwise upon

plaintiff. (1 Thompson on Negligence, sec. 658; 2 Bailey on Personal Injuries, sec. 2581; *Giacomini* v. *Pacific Lum. Co.,* 5 Cal. App. 220, [89 Pac. 1060].)

Plaintiff's son and another mason built the faulty piers that finally collapsed under the weight of the wall constructed upon the I-beam which rested upon said piers. It is undisputed that plaintiff had nothing to do with the actual construction of these piers. He also testified that he was unaware of the method used in building them. Was plaintiff, under such evidence, which the jury had the right to accept, in a position to deny that he was injured by the carelessness of a fellow-servant? We must answer this question affirmatively. There was abundant testimony showing that the piers were mere tapering circular chimneys of half bricks, filled in with mortar and "sprawls" or fragments of brick. So constructed they were totally inadequate to carry the weight of the wall which was to be built above the I-beam. George Adele, one of the masons, testified that this method of construction was followed by reason of the express direction of Connor, who promised a dollar to the man who would build the best looking pier. Wolf, one of the carpenters employed on the building, corroborated Adele in this statement. Connor admitted that he offered a dollar to the man who should construct the best pier and that after the north piers were built he gave each of the workmen a dollar. He denied giving any direction for the building of the piers in the manner described by Adele, but upon the conflict of evidence the jurors might well conclude that Connor ordered the men to construct the piers in a manner to leave them inadequate for the weight which was to be placed upon them, and that after they were so built his attention was particularly directed to them by reason of his promised reward to the builder of the most sightly column. According to the testimony of the plaintiff, Connor ordered him to proceed with the building of the wall after the I-beam had been placed on top of the north piers. Such a state of facts would not support the "fellow-servant" doctrine. The place upon the wall where plaintiff was working at the time of the accident was unsafe and the negligence arising by reason of furnishing such a perilous place for the workman is chargeable directly to the master, and this is the rule even when the master has not, as here, actual knowledge of the

danger. The piers, topped by the I-beam, constituted a means or appliance furnished for the prosecution of further work. In other words, this case is clearly within the doctrine of those which hold that a tunnel as fast as it is completed, becomes an appliance furnished by the master by which the remaining work is to be prosecuted. (*Hanley* v. *California Bridge Co.,* 127 Cal. 237, [47 L. R. A. 597, 59 Pac. 577]; *McRae* v. *Erickson,* 1 Cal. App. 326, [82 Pac. 210].) Essentially the same rule is also expressed in *Mullin* v. *California Horseshoe Co.,* 105 Cal. 83, [38 Pac. 535], and *Galasso* v. *Natl. S. S. Co.,* 27 App. Div. 169, [50 N. Y. Supp. 417].)

The jury was also justified in finding plaintiff guilty of no negligence in failing to observe the faulty condition of the piers. If he was, as he testified, actually ignorant of existing conditions he was under no obligation to investigate. (*Starr* v. *Kreuzberger,* 129 Cal. 124, [79 Am. St. Rep. 92, 61 Pac. 787]; *Silveira* v. *Iverson,* 128 Cal. 187, [60 Pac. 687]; *Dolan* v. *Sierra Railway Co.,* 135 Cal. 439, [67 Pac. 686].)

Appellant calls our attention to the court's rulings in the admission of certain evidence. Plaintiff was asked this question: "When you produced the labor, the men, and put them on the job, under whose control and management were they?" An objection on the ground that the question called for the conclusion of the witness was overruled, and he answered, "Mr. Crow and Mr. Connor." Similar objection was interposed without success and the same answer was given to the question asked of witness Adele: "Under whose control did you do the work?" We do not see that either question called for a conclusion. Both were tantamount to an inquiry, "Who gave the orders?" Questions calling for answers much nearer the border line of conclusion have been held not erroneous. (*Kaltschmidt* v. *Weber,* 145 Cal. 598, [79 Pac. 272]; *Bunting* v. *Salz,* (Cal.) 22 Pac. 1133; *Nathan* v. *Dierssen,* 146 Cal. 66, [79 Pac. 739].) The court committed no error in overruling the objection to the question propounded to plaintiff: "Did you give those men that built the piers, the north piers, instructions how to build them?" The ground of the objection was that plaintiff was seeking to impeach his own contract. On the contrary, we think the question called for a fact, which the answer revealed, tending to support the plaintiff's theory of the contract. During the examination of Newton Majors,

he was asked the following question: "Now, you say you worked with your father, both before and since the accident. What was his capacity for work before the accident, as compared with it since the accident?" To this question there was an objection on the ground that the witness was not qualified to testify and on the further ground that it was not proper redirect examination. The court said: "Oh, he may answer," and witness replied: "Well, I don't think he could do near the work. I know he could not do the work now that he could before this thing happened." Even if the latter part of the objection were timely, the court's remark was equivalent to a ruling that discretion would be exercised in permitting counsel to propound a question not strictly allowable on redirect examination. Such discretion may always be used. The rest of the objection is entirely without force. In the first place, the witness was himself a mason and qualified to speak with reference to the amount of work which his father could do at his trade as compared with that which he could accomplish before the accident. But even if the witness had not been an expert in this matter, his relation to and intimate acquaintance with plaintiff would have been sufficient to qualify him to answer. (*Robinson* v. *Exempt Fire Co.*, 103 Cal. 5, [42 Am. St. Rep. 93, 24 L. R. A. 715, 36 Pac. 955].)

The instructions fully and fairly delivered the law to the jury and were without material error.

The judgment and order from which the defendants have appealed are affirmed.

Lorigan, J., and Henshaw, J., concurred.