[S. F. No. 5768.   Department Two.—June 17, 1912.]

## EDWARD FAY, Respondent, v. GERMAN GENERAL BENEVOLENT SOCIETY (a Corporation), Appellant.

NEGLIGENCE—MASTER AND SERVANT—WORK DONE BY INDEPENDENT CONTRACTOR—INSTRUCTIONS—DIRECTION AND CONTROL OF WORKMEN.—In an action by a plasterer against the owner of a building, to recover damages for personal injuries occasioned by a fall due to the breaking of a rope holding the platform upon which he was standing while at work, and in which the defense was that the plaintiff was employed by an independent contractor, an instruction that "where the owner of a building has certain work done thereon under another and pays that other as his compensation therefor a percentage upon the cost of labor performed and materials furnished and the owner pays for the materials used and pays the men each week to perform the work and has the power to discharge them, then in that case the owner is the master and the men who do the work are the servants of the master or owner" is an erroneous statement of the law determining the relation of master and servant in that it ignores the elements of entire direction and control prescribed by section 2009 of the Civil Code.

ID.—NEGLIGENT INJURY TO EMPLOYEE—LIABILITY HOW DETERMINED.—The master's liability for the negligence of his servant rests upon his right to select the servant and to control his work, but, where this selection and control rests in another, he is freed from such liability.

ID.—WANT OF AUTHORITY TO SELECT AND DISCHARGE WORKMEN.—Where the contract under which the plastering was being done did not give the owner of the building the right to select or discharge the workmen, but only to remove the contractors if at any time they should fail to have sufficient men or materials to prevent delay of the general work, the relation of master and servant did not exist between the owner and the employees of the contractor.

ID.—POWER TO DISCHARGE WORKMEN—KEEPING TIME OF CONTRACTOR'S EMPLOYEES.—The mere power to discharge workmen does not necessarily imply that they are the servants of the person possessing that authority, nor does the circumstance that the owner kept the time of the workmen have any significance, in view of the fact that, under the contract for the work, the contractor's compensation depended partly upon the cost of the labor.

ID.—EFFECT OF CONTRACTOR USING OWNER'S APPLIANCES.—The mere fact that the rope, the breaking of which caused the accident, belonged to the owner of the building, would not render the owner liable, in the absence of any showing that he insisted upon its use by the employees of the contractor.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order refusing a new trial. John Hunt, Judge.

The facts are stated in the opinion of the court.

W. S. Goodfellow, Jesse W. Lilienthal, Albert Raymond, Lilienthal, McKinstry & Raymond, and Goodfellow, Eells & Orrick, for Appellant.

Andrew Thorne, Earll H. Webb, and Robert P. Troy, for Respondent.

MELVIN, J.—Plaintiff, who was a plasterer, was seriously hurt by a fall due to the breaking of a rope holding the platform upon which he was standing while at work. That he was badly injured is not controverted, and that at the time of the accident he was putting a coat of plaster upon the sides of an air shaft in one of the buildings of the German Hospital which the defendant corporation was constructing is also undenied. Judgment was given in favor of plaintiff for seven thousand five hundred dollars. From this judgment and from an order denying its motion for a new trial defendant appeals.

The principal attack of defendant's counsel on the judgment is based upon the argument to the effect that the plaintiff was employed by an independent contractor and not by defendant. A contract had been let for the construction of the hospital but the contractor failed to complete his work and thereafter the superintendent of the hospital, W. P. Barry, was appointed to take charge of the work and to see that the building should be completed in accordance with the plans and specifications prepared by the architect. In performing his duties, Barry, as he testified, sometimes made contracts and sometimes did not. He entered into a written arrangement with Smythe Brothers, for the work of plastering. By the terms of this agreement Smythe Brothers were to do all the work of plastering to be done in the group of buildings known as the German Hospital. They promised to perform their part of the contract in a thorough and workmanlike manner and in strict accordance with the plans and

specifications of defendant's architects. This writing also contains the following:—

"Should the said Smythe Brothers fail at any time to have sufficient men or materials so as to delay the general work, or neglect the same in any way, or act in any way unsatisfactory to architect it shall be in the power of said W. P. Barry to remove said Smythe Brothers from the work and continue the same without hinderance. All material necessary for said plastering to be purchased by said Smythe Brothers as required and they shall present a bill for the same monthly to the said German General Benevolent Society, adding to said bill five per cent of the same and five per cent of labor paid during the month said bills were contracted. All of the labor required in said plaster work shall be paid net by the German General Benevolent Society each week. On the final and satisfactory completion and acceptance of said work, said Smythe Brothers are to receive an additional five per cent of all bills, for material and all labor paid during the progress of the work."

Under this agreement the work went on. Plaintiff was put to work by Gauldie, who was the foreman for Smythe Brothers. Gauldie agreed with plaintiff how much the latter's pay should be, and his wages were handed to him by Gauldie. He testified that he took no orders from Barry, defendant's superintendent. On the witness stand Barry stated that no one but Smythe and his foreman had control over the plasterers. Their money was sometimes paid by checks, drawn by Barry in favor of Smythe Brothers, and sometimes sufficient sums of money for the wages were paid directly to Gualdie, foreman for the Smythes. The weekly receipts, signed by plaintiff and his coworkers, were given to Smythe Brothers and payment was acknowledged by them. The rope which broke and precipitated plaintiff down the airshaft was the property of defendant, but the court properly instructed the jury that that fact alone would not make defendant liable. The court gave the following instruction which may well be taken as the basis of the determination by the jury that Fay was a servant of the defendant corporation:

"You are instructed that where the owner of a building has certain work done thereon under another and pays that

other as his compensation therefor a percentage upon the cost of labor performed and materials furnished and the owner pays for the materials used and pays the men each week to perform the work and has the power to discharge them, then in that case the owner is the master and the men who do the work are the servants of the master or owner, and the person who is thus paid such a percentage as his compensation is only the agent of the owner and the men who do the work in such a case are the servants of the owner of the building.''

This instruction ignored the elements of entire direction and control prescribed by section 2009 of the Civil Code, as defining the relation of master and servant. It overlooked the clear terms of the contract which did not give defendant the right to select or discharge the plasterers, but only to remove Smythe Brothers if at any time that firm should fail to have sufficient men or materials to prevent delay of the general work. As was said in *Callan* v. *Bull*, 113 Cal. 598, [45 Pac. 1018] : "The master's liability for the negligence of his servant rests upon his right to select the servant and to control his work, but, when this selection and control rests in another, he is freed from such liability.'' (See, also, *Houghton* v. *Loma Prieta Lumber Co.*, 152 Cal. 577, [93 Pac. 377] ; *Teller* v. *Bay & River Dredging Co.*, 151 Cal. 211, [12 Ann. Cas. 779, 12 L. R. A. (N. S.) 267, 90 Pac. 942] ; *Boswell* v. *Laird*, 8 Cal. 489, 493, [68 Am. Dec. 345].) There is nothing in the case of *Needham* v. *Chandler*, 8 Cal. App. 126, [96 Pac. 325], to sustain the position of respondent that a contract like the one here considered gives no independent *status* to the contractor. The point decided in that case was that in a controversy between the original parties to the agreement it was wholly immaterial whether or not the contract was filed for record. The contract provided for the payment of the architect by a percentage of the cost of constructing the building, and the court did say that "in effect" the contract was "merely an authorization in writing by which plaintiff was to act as agent for defendant for a compensation named in the writing"; but the court was discussing the question of the alleged necessity for recording such an instrument. Responsibility for the act of a servant was in no manner involved in the case of *Needham* v. *Chandler*.

Respondent's belief is that the jury found upon conflicting evidence that Fay was a servant of the German General Benevolent Society. Really there was no substantial conflict. It is true that Barry testified to his right to discharge men if they were drinking, idling, shirking, "or anything of that kind"; but he never did exercise that authority and there was no evidence of any contract, written or verbal, giving him powers in excess of those provided for in the agreement heretofore mentioned. Mere power to discharge men does not necessarily imply that they are the servants of the person possessing that authority. In *Callan* v. *Bull*, 113 Cal. 598, [45 Pac. 1018], the court held that: "The reservation by the employer of the right to remove any of the employees of the contractor does not relieve the latter from liability for the negligence of his employees. (*Reedie* v. *Railway Co.*, 4 Ex. 244; *Cuff* v. *Newark etc. R. R. Co.*, 35 N. J. L. 17; 10 Am. Rep. 205.)" So in this case if the authority of Barry or of Walsh, his assistant, to remove men from the work be conceded, that does not indicate that Smythe Brothers were not independent contractors. Nor is the circumstance that defendant's servant kept the time of the plasterers at all significant of a condition not shown by the written contract. As the compensation of the firm having the contract for plastering depended partly upon the cost of the labor, it was very natural that defendant acting after default of its general contractor as its own builder should keep account of the labor and material used in the work of plastering. That Barry had the general direction of the work as to the results thereof is doubtless true, but he did not have authority to direct the *manner* in which the work was to be performed. As he himself said: "I did not offer any suggestions or opinions to the workmen at any time; I am not a plasterer; I would not know how to do the work." It would not be valuable to review the testimony of Barry and Walsh further regarding their own views of their powers as employees of the defendant corporation. It is sufficient to say that nothing in their conduct demonstrated a state of facts inconsistent with the standing of Smythe Brothers as independent contractors. We are satisfied that the instruction given by the court and quoted herein was not a correct

statement of the law applicable to the evidence adduced at the trial and that the proof did not justify the verdict.

The only other matter requiring notice is the furnishing by defendant of the rope which broke and caused the accident. We are not unmindful of the rule that makes a principal responsible where he arbitrarily assumes to direct the employees of a subcontractor and thereby creates an unsafe place or furnishes an unsafe applicance for the conduct of their work. (*Majors* v. *Connor,* 162 Cal. 131, [121 Pac. 373].) In this case there was proof that many appliances used by the original general contractor and others purchased by the defendant after it, through its agents, took charge of the work, were upon the premises. It does not appear that defendant's superintendent insisted upon the use by the servants of Smythe Brothers of the rope belonging to the defendant. For all the evidence shows, the rope may have been merely loaned to Smythe Brothers. The case was not tried upon the theory that defendant was liable because it had furnished an inherently dangerous instrumentality. The court properly instructed the jury that this was a suit brought by the plaintiff as a servant against a master, and that if the jurors believed Smythe Brothers to be independent contractors their verdict should be for the defendant. No other questions in this case require consideration.

The judgment and order are reversed.

Henshaw, J., and Lorigan, J., concurred.

Hearing in Bank denied.