[Civ. No. 4528.   Second Appellate District, Division Two.—May 5, 1927.]

## C. J. WILLIS et al., Respondents, v. SAN BERNARDINO LUMBER & BOX CO. (a Copartnership) et al., Appellants.

[1] APPEAL—VERDICT—CONFLICT OF EVIDENCE.—Where there is a conflict of evidence, the appellate court will determine only whether there is a substantial showing made by the record upon which the jury justly might have reached a conclusion different from that for which appellants contend.

---

1. See 2 Cal. Jur. 921; 2 R. C. L. 194.

[2] NEGLIGENCE—DAMAGES—COLLISION OF AUTOMOBILE AND UNLIGHTED MOTOR-TRUCK—CONTROL OF TRUCK—PARTNERSHIP—EVIDENCE—VERDICT.—In this action for damages sustained by the collision of an automobile with an unlighted motor-truck on a highway at night, the evidence was sufficient to sustain the verdict against partners as having control of the truck.

[3] ID.—MOTOR VEHICLE ACT—OWNERSHIP OF TRUCK—REGISTRATION—LIGHTS—INDEPENDENT CONTRACTOR.—In such action, where the truck was used in transporting products of the copartnership and was registered in the name of the manager, who exercised control thereof, the partners were liable, under Stats. 1919, page 194, Deering Gen. Laws 1923, Act 5128, section 16, for damages resulting from leaving the truck unlighted on the highway, although the person using the truck may have been an independent contractor.

[4] ID. — EMPLOYER AND EMPLOYEE — AGENCY.—In such action, the members of the copartnership could not avoid liability on the ground that the manager was acting as the agent of a third party in the control of the truck.

[5] ID.—HIGHWAYS—REPAIRING UNLIGHTED VEHICLE AFTER DARK—EVIDENCE.—In such action, where the unlighted truck was stopped for repairs on the highway after nightfall, it was no defense that the vehicle would have been back to the owner's place of business before dark but for the mishap on the road.

[6] ID. — INSTRUCTIONS — ABSENCE OF LIGHTS — EMPLOYER AND EMPLOYEE.—In such action, an instruction that the negligent failure of the driver to carry lights rendered the partnership liable, if the proximate cause of damage, was harmless, where the managing partner had expressly ordered the driver to proceed without them.

[7] APPEAL—UNARGUED POINTS.—Points presented on appeal, without argument, are not entitled to consideration.

---

(1) 4 **C. J.**, p. 860, n. 11.    (2) 42 **C. J.**, p. 1236, n. 36.    (3) 42 **C. J.**, p. 1097, n. 62.    (5) 42 **C. J.**, p. 1014, n. 9.    (6) 4 **C. J.**, p. 1029, n. 30.    (7) 4 **C. J.**, p. 1069, n. 23.

APPEAL from a judgment of the Superior Court of San Bernardino County. J. W. Curtis, Judge. Affirmed.

The facts are stated in the opinion of the court.

---

3. See 3 Cal. Jur. 858, 863; 13 Cal. Jur. 1027; 14 R. C. L. 84.
7. See 2 Cal. Jur. 732; 2 R. C. L. 178.

William Guthrie and McNabb & Hodge for Appellants.

Swing & Wilson for Respondents.

WORKS, P. J.—This is an action for damages occasioned by the collision of an automobile with a motor-truck. The automobile was proceeding along the right side of a highway and was occupied by plaintiffs. The truck was standing at the same side of the thoroughfare, partially on and partially off the traveled portion of the road, and was faced in the direction in which the automobile was proceeding. The events out of which the litigation grows occurred in the evening, when the darkness of night was fully on. The truck was wholly without lights. As plaintiffs went toward the vehicle they did not see it, the circumstance being partially owing to the fact that the headlights of a car approaching from the opposite direction blinded them to every other object. Then occurred the collision out of which the action arises.

At the trial the action was dismissed as to the defendants Parsons J. Shropshire and Doig. The jury rendered a verdict against the defendants M. Y. Kellam, Jr., Mollie M. Shropshire, and E. R. Kellam. The two of these defendants who are first named were copartners doing business under the name of San Bernardino Lumber and Box Company. E. R. Kellam was the manager of the copartnership. An appeal is prosecuted by each of the defendants against whom the verdict was pronounced.

[1] The first point made by appellants is that the evidence was insufficient to support the verdict. They contend that the defendant Doig was the owner of the truck and that he was an independent contractor in the performance of certain services for the copartners, in a part of which service the vehicle was engaged at the time when the collision occurred. There was evidence, undoubtedly, which supported this theory, but under the rules of law applying in a court of review when there is a conflict of evidence, we are to determine only whether there is a substantial showing made by the record upon which the jury justly might have reached a conclusion different from that for which appellants contend.

82 Cal. App.—48

The record discloses testimony from which the jury properly might have found that the following were the facts: The copartnership was in constant need of trucks for the transport of the products of its operations, the general nature of which products sufficiently appears from the name under which the copartnership did business. Without dispute it also appears that the truck with which the car of plaintiffs collided was purchased by E. R. Kellam, the manager of the copartnership, that, as owner, he caused it to be registered in his name with the state authorities, and that it remained so registered at the time of the collision. The truck was bought on the installment plan and all payments upon it, including an initial payment of several hundred dollars, were made from the funds of the copartnership. There was undisputed testimony, however, that all these payments were charged to Doig on the books of the copartnership as an offset against amounts due to him from time to time for hauling. When the truck was first purchased it was operated by a son of defendant Doig, and pending this state of affairs that defendant left San Bernardino, in and about which city the copartnership conducted its operations, expecting to be absent therefrom for a period of two months. The collision between the car of respondents and the truck occurred before his return. Some time after his departure, and some time before the accident, defendant Doig's son ceased to operate the truck, whereupon E. R. Kellam wrote Doig suggesting that a new driver be obtained. He said in the letter, "I am sure I can manage the truck without bothering you to come home." Doig answered, in substance, that it was all right to put a man on the truck and put it to work. Soon after this the defendant Blodgett saw an advertisement in a newspaper, inserted by an employment agency, to the effect that a truck driver was wanted. He applied to the agency for the position and was sent to the office of the copartnership. He there first saw Mrs. Shropshire, one of the appellants, who was actively concerned in the business of the copartnership, and stated to her that he was an applicant for the position as truck driver. She turned him over to E. R. Kellam. The latter made inquiry as to Blodgett's qualifications and engaged him. He told Blodgett he would pay him a certain amount per day for his services. Blodgett

was told that he was to drive the truck which is in question here, and the next morning after he was employed, apparently, he "fixed up" the body of the vehicle, which was in need of repairs. He was "set to work" by E. R. Kellam in the performance of this task. The truck, from the date of its purchase up to the time of the mishap between it and the car of respondents, and during the time when both Doig's son and Blodgett were its drivers, was never used for any purpose except to do hauling for the copartnership. All the hauling done by Blodgett was at the direction of E. R. Kellam or someone else connected with the copartnership, and there was an understanding with Doig whereby the operations of the truck were to be conducted in that manner. The oil and gasoline Blodgett used on the truck he was told by E. R. Kellam to get. These items were charged to Doig on the books of the copartnership. An arrangement existed between Doig and E. R. Kellam whereby the latter was to keep the truck in repair and to make charges for repairs against Doig on the copartnership books. At the time of Blodgett's employment the vehicle had neither headlights nor a tail-light. At the direction of E. R. Kellam he got the headlights "fixed" so they would burn, but immediately one of them broke and would not light again. This made the remaining one useless as one would not burn unless both were connected up. Just before he took the truck out on the trip during which, on the return, the vehicle was run into by the car of respondents, Blodgett told E. R. Kellam about the condition of the headlights and called his attention to the absence of a tail-light, and Kellam said to take the load which was to be hauled on the trip "and we would get along that day all right without fixing it up." The trip was therefore undertaken with a useless single headlight and without a tail-light. Something went wrong with the truck on the return from the trip and Blodgett stopped by the roadside to make repairs. It was then that the car of respondents collided with the truck. E. R. Kellam was practically in entire control of the business of the copartnership. M. Y. Kellam, Jr., one of the partners, a brother of E. R. Kellam, did not reside in San Bernardino and was at the copartnership place of business at rare intervals. Mrs. Shropshire, the other partner, testified: "I attend to the office in Mr.

[E. R.] Kellam's absence and work directly under him. . . . I do exactly as he says."

[2]   With this record we think it unnecessary to decide whether Doig was an independent contractor. Granting that he was, appellants had such control over the truck and over its driver as to render them legally responsible for the damages flowing from the accident from which the litigation arises.   [3]   The fact that the vehicle was registered with the authorities in the name of E. R. Kellam is a material circumstance.   Under the law the right so to register a motor vehicle is, and was at the time of the events here set down, conferred upon "any person . . . having the lawful use or control, or the right to the use or control, of a vehicle, under a lease or otherwise, for a period of ten or more successive days" (Stats. 1919, p. 194; Deering Gen. Laws 1923, Act 5128, sec. 16).   Whatever the understanding between Doig and Kellam as to the effect of the registration of the truck in the name of the latter, he certainly held himself out to the world as the one who used or controlled the use of the vehicle.   There are also authorities which bear upon the general situation disclosed by the record. Where one exercises such a control over the men employed or the mechanism used by an independent contractor with him as did the appealing defendants here, he is liable for damages arising from such exercise of control, the doctrine of proximate cause, of course, being satisfied (*Cotter* v. *Lindgren,* 106 Cal. 602 [46 Am. St. Rep. 255, 39 Pac. 950]; *Majors* v. *Connor,* 162 Cal. 131 [121 Pac. 371]; *Connell* v. *Harris,* 23 Cal. App. 537 [138 Pac. 949]; *Burns* v. *Jackson,* 53 Cal. App. 345 [200 Pac. 800]).   [4]   It is contended that the copartners cannot be liable for the reason that E. R. Kellam, in controlling the operation of the truck, was acting as the agent or representative of Doig.   This contention is to our minds untenable.   The record plainly shows that whatever Kellam did he did as the manager of the copartnership and in furtherance of its interests.   Particularly, it is to be noted that his acts, or some of them, disregarding for the moment the fact that he was the manager of the business of his co-defendant partners, were brought home to the copartnership by the charges which were made in its books against Doig.   This is true as to the charges made for payments on the purchase price of the truck, for

the expense of repairs made upon it under the direction of E. R. Kellam, and for oil and gasoline supplied to it under his orders. It would appear, however, that the fact that he was manager and sole directing head of the copartnership business is enough. We think the three appealing defendants were joint tort-feasors.

[5]  It is insisted on behalf of E. R. Kellam that the absence of lights on the truck could have done no harm in the daytime, and that the evidence shows that the vehicle would have been back to the place of business of the copartnership before nightfall, but for some mishap on the road. This point is untenable. To uphold it would be to afford too ready a means for the escape from liability of any owner of a motor vehicle who held the fond but delusive hope that his car would reach home before night after some journey, when its lack of lights caused damage to one who came into collision with it as a penalty for being out too late himself.

[6]  Appellants take exception to an instruction to the jury. It contained language to the effect that "if you believe from the evidence . . . that the truck was . . . used and operated by defendants and did not carry [a] lighted red lamp or lantern, . . . and if you believe that the injuries sustained by the plaintiffs were directly and proximately caused by the failure and negligence of the defendants or any of them to so carry . . . such lighted red lamp or lantern, then I instruct you that the failure of the defendants so operating said truck to carry said lighted red lamp or lantern constituted negligence on the part of said defendants and said defendants are liable," etc. Appellants say that this was "a flat instruction that if defendant Blodgett failed to carry lights on the truck that the appellants must be held liable for damages." If the instruction is so to be construed, it could not have been harmful to appellants, for the failure to carry lights was owing solely, under the uncontradicted evidence, to the order of E. R. Kellam, issued to Blodgett, that the truck proceed on its trip without them. Also, the jury was told in another instruction, after the meaning of the term "negligence" had been stated to its members, that if it was found that respondents should recover, a judgment might be rendered against "the defendants, or such of said defendants as in

your opinion were guilty of negligence as defined in these instructions.''

[7] Appellants make one or two points which they do not argue. Points so presented are not entitled to consideration. Other contentions are made which are answered by what we have already said. Some points are also urged which are not of sufficient merit to require a separate consideration.

Judgment affirmed.

Thompson, J., and Johnson, J., *pro tem.,* concurred.