[L. A. No. 23543.   In Bank.   July 1, 1955.]

ANDREW V. McDONALD, Appellant, v. SHELL OIL COMPANY, INC. (a Corporation) et al., Respondents.

James C. Hollingsworth, Edward Henderson and Margaret Keller for Appellant.

Bauder, Gilbert, Thompson & Kelly, Bauder, Gilbert, Thompson, Kelly & Veatch, Churchill & Teague, E. Perry Churchill and W. I. Gilbert for Respondents.

SPENCE, J.—Plaintiff appeals from a judgment of nonsuit granted at his third trial, the two previous trials having resulted in jury verdicts for plaintiff followed by the granting of motions for new trial. Viewing the evidence in the light most favorable to plaintiff and disregarding conflicts in accordance with the settled rules applicable in testing the propriety of nonsuits (*Huffman* v. *Lindquist*, 37 Cal.2d 465, 468 [234 P.2d 34] ; *Palmquist* v. *Mercer*, 43 Cal.2d 92, 95 [272 P.2d 26]), it nevertheless appears that the law precludes plaintiff from recovering damages from defendants Shell Oil Company and Neuhaus.

Plaintiff was an employee of Owens, an independent contractor engaged by defendant Shell to recover certain casing and to abandon an oil well located upon a Shell lease near Ventura. Plaintiff was injured while working, with three other employees of Owens, on a well-pulling rig owned by Owens. The rig and the four-man crew were furnished by Owens pursuant to his contract with Shell. The rig had a cathead, which is a revolving spool, and a catline, which is a piece of manila rope about an inch and a half thick. The catline had a hook on one end, and the other end was wrapped around the cathead. The cathead and catline were used to pick up equipment and pipe joints, and lay them down around the rig. The cathead had no safety clamp or lock to stop the lowering or raising operation and leave a weight on the catline. Such safety clamp will keep the catline in place so that the revolving cathead need not hold the weight. If the revolving cathead has no safety clamp, the catline is likely to burn as a result of the friction, and the object attached to the catline will fall. That is what happened here. Steel elevators weighing approximately 1,200 pounds were suspended on the catline about 24 to 30 feet in the air at the top of the drill pipe. No one was stationed at the controls of the cathead. The friction of the revolving cathead, which was worn

and grooved, caused the catline to burn and break, so that the suspended elevators fell on plaintiff, resulting in his serious injury. This procedure was contrary to that customarily followed by Owens' employees and constituted a dangerous and unusual practice. It was adopted at the time in question under the order of Owens' driller, who was in charge of the crew's work. While under its contract with Owens, Shell had the right to have a foreman on the job at all times, neither its general production foreman, defendant Neuhaus, nor any other of its employees was present when the accident happened.

Shortly prior to the accident Owens' employees had obtained from Shell's warehouse a new rope, which was installed as a catline on the rig. There was no provision in the contract indicating that Shell should provide such items for Owens' use on the job, and it was simply borrowed for the time as other pieces of equipment had been borrowed on previous occasions. Plaintiff makes no claim that this new rope or catline was in any way defective or contributed to the cause of the accident. But plaintiff does contend that Shell and its agent Neuhaus had and exercised control over the operations of Owens and knew, or should have known, of the absence of the safety clamp, and the worn and grooved condition of the cathead. On the other hand, defendants maintain that they did not actively interfere with or direct Owens in his independent operations, that they had no duty to provide safe equipment or appliances for the use of plaintiff, who was the employee of Owens, the independent contractor, and that the sole proximate cause of plaintiff's injuries was the negligence of Owens and Owens' employees.

An independent contractor is one who renders service in the course of an independent employment or occupation, following his employer's desires only as to the results of the work, and not as to the means whereby it is to be accomplished. (*Moody* v. *Industrial Acc. Com.*, 204 Cal. 668, 670 [269 P. 542] ; *S. A. Gerrard Co.* v. *Industrial Acc. Com.*, 17 Cal.2d 411, 413 [110 P.2d 377].) The general supervisory right to control the work so as to insure its satisfactory completion in accordance with the terms of the contract does not make the hirer of the independent contractor liable for the latter's negligent acts in performing the details of the work. (*Green* v. *Soule*, 145 Cal. 96, 99-100 [78 P. 337].) An owner is not liable for injuries resulting from defective appliances unless he has supplied them or has the

privilege of selecting them or the materials out of which they are made (*Hard* v. *Hollywood Turf Club,* 112 Cal.App.2d 263, 274-275 [246 P.2d 716]) or unless he exercises active control over the men employed or the operations of the equipment used by the independent contractor. (*Willis* v. *San Bernardino Lbr. & Box Co.,* 82 Cal.App. 751, 756 [256 P. 224].)

Under the terms of his independent contract, Owens was obligated to furnish the well-pulling rig equipment and he did furnish it; the work which was being performed at the time of the accident was the very work which Owens was required to perform under his contract; no severable portion of the work over which Shell had retained control was being performed; there were no Shell employees or foremen present at the time of the accident, and they had no knowledge that the equipment was being used in such unusual and dangerous manner as it was when plaintiff was injured; and Shell at no time, under the evidence, affirmatively assumed control, interfered with or actively directed any details of the work being performed by Owens' crew.

Plaintiff argues that Shell retained control over the methods and manner of performance of the work by Owens' crew because defendant Neuhaus, its general production foreman, testified that he was in charge of the abandonment of the oil well in question and had the equipment under his observation; that Shell always had a working production foreman on the job, though he never gave any "orders or directions to any man on the job" but dealt directly with Owens' foreman; that the Shell foreman and Owens received the same work sheets; that Shell had authority under its contract to stop Owens if it considered the work unsatisfactory in any respect; that after the accident Shell conducted an investigation and its committee recommended the use of a catline clamp to replace riding the rope on the cathead, which safety device was thereafter installed by Owens' employees. Plaintiff further cites this provision in the contract between Shell and Owens as to "Inspection": "Without in any manner affecting Contractor's duties and obligations hereunder, material and workmanship at all times shall be subject to the inspection of Shell's representative, who shall be the sole judge and final authority concerning materials furnished and work done hereunder." Finally, plaintiff cites his own testimony as to his personal observation of a visit made to Owens' well-pulling rig by a Shell foreman; that the latter criticized the way in which the casing had been piled, stating

to Owens' driller, "You know better than that, how to stack that casing"; that the Shell foreman then procured a truck and moved the casing.

However, the owner may retain a broad general power of supervision and control as to the results of the work so as to insure satisfactory performance of the independent contract—including the right to inspect (*Callan* v. *Bull,* 113 Cal. 593, 598-599 [45 P. 1017]), the right to stop the work (*Fay* v. *German General Ben. Soc.,* 163 Cal. 118, 122 [124 P. 844]), the right to make suggestions or recommendations as to details of the work (*S. A. Gerrard Co.* v. *Industrial Acc. Com., supra,* 17 Cal.2d 411, 414), the right to prescribe alterations or deviations in the work (*Green* v. *Soule, supra,* 145 Cal. 96, 99-100)—without changing the relationship from that of owner and independent contractor or the duties arising from that relationship. Accordingly, Shell under the above-quoted contract provision had the right to inspect; its foreman was given the same work sheets as Owens so it could keep account of the general progress of the work; and it could stop Owens' work if satisfactory results were not being produced. Shell's investigation after the accident merely followed its customary policy in such circumstances, and its committee's report was an intercompany communication rather than directed to the independent contractor Owens. But regardless of these factors, Owens' subsequent installation of the recommended safety device on the well-pulling rig merely accorded with Shell's right to make suggestions without assuming to direct the manner of performing the work. Likewise, the incident of criticism voiced by one of Shell's foremen with respect to the piling of the casing illustrates the exercise of control as to only the results of the work; he merely objected to the stacking as such and moved the casing, but he did not undertake to direct Owens or his employees as to the details of the method to be employed in accomplishing such work. All of these rights retained by Shell in the exercise of its general supervisory control accord with its interest in the ultimate result of the work without undertaking to direct the "means whereby it is to be accomplished." (*S. A. Gerrard Co.* v. *Industrial Acc. Com., supra,* 17 Cal. 2d 411, 413.)

Various factual situations in which an owner may be liable for injuries to the employee of the independent contractor should be distinguished: (1) This is not a case where the employee of the independent contractor was injured by some

condition of the owner's premises over which the owner remained in control, and where the owner's duties to the employee were those owing to a business invitee (*Austin* v. *Riverside Portland Cement Co., ante,* p. 225 [282 P.2d 69]; *La Malfa* v. *Piombo Bros.,* 70 Cal.App.2d 840 [161 P.2d 964]; *Bondini* v. *Amship Corp.,* 81 Cal.App.2d 751 [185 P.2d 94]; *Oldham* v. *Atchison, T. & S. F. Ry. Co.,* 85 Cal.App.2d 214 [192 P.2d 516]; (2) Nor is this a case where the owner furnished the equipment or was obligated by contract to do so, and the equipment proved to be defective, causing injury to the employee of the independent contractor (*Moran* v. *Zenith Oil Co.,* 92 Cal.App.2d 236 [206 P.2d 679]; *Martin* v. *Food Machinery Corp.,* 100 Cal.App.2d 244 [223 P.2d 293]); (3) Finally, this is not a case where the owner actively interfered with or arbitrarily assumed to direct the employees of the independent contractor as to the manner and method of performing the work. (*Majors* v. *Connor,* 162 Cal. 131 [121 P. 371]; see anno.: 44 A.L.R. 932.) Likewise distinguishable is *Snow* v. *Marian Realty Co.,* 212 Cal. 622 [299 P. 720], where the owner's liability for damages stemmed not from responsibility for the negligent acts of the independent contractors but from the allowance of work on its property constituting a nuisance.

Plaintiff particularly relies on *Hargrave* v. *Acme Tool & Tester Co.,* 125 Cal.App.2d 34 [269 P.2d 913], to support his claim. However, there the employee of the independent contractor sustained injury under wholly different circumstances. A particular water-testing operation was being conducted separate and apart from the work to be performed under the independent contract; the owner was obligated both by contract and by custom to select the testing company; the owner retained the right to control and instruct as to the details in manner and method of conducting the separate testing operation; and the owner actively participated with the testing company in allowing the employee of the independent contractor to use defective appliances, which resulted in the injury. In such situation it was deemed a question of fact whether the owner by "failure to supply the proper plugs and safety chains and by permitting [the injured workman] to use the makeshift plugs [was] guilty of negligence which was the proximate cause of the accident." (P. 40.) But none of these determinative factors is present here.

■ We conclude that the record before us shows no basis for establishing liability on the part of defendants Shell Oil Company or their agent Neuhaus; and that the trial court properly granted the motion for nonsuit of these defendants at the close of plaintiff's case. In view of this conclusion, it becomes unnecessary to consider the effect of plaintiff's receipt of a compensation award against Owens through the Industrial Accident Commission as a bar to his prosecution of the present action against Shell Oil Company because of his industrial injury. (See *Popejoy* v. *Hannon,* 37 Cal. 2d 159, 171-172 [231 P.2d 484].)

The judgment is affirmed.

Gibson, C. J., Shenk, J., Traynor, J., and Schauer, J., concurred.

CARTER, J.—I concur in the judgment of affirmance. This is clearly an orthodox case where the sole cause of the injury was the negligence of the independent contractor (plaintiff's employer) and it does not fall within any of the situations in which an owner may be liable for injury to the employee of his independent contractor. Under the contract between defendant and Owens (plaintiff's employer) the latter was to remove the casing from defendant's oil well which was to be abandoned. Defendant had no right to and did not exercise any control over the performance by Owens of the contract; it did not own or have any control over the equipment to be used on the job, that equipment being owned and furnished by Owens, while defendant owned the oil well and premises on which it was located; the injury was not caused by any condition of the well or the premises, it being caused solely by the equipment owned and furnished by Owens; the injury was as much removed from defendant's sphere of responsibility as it would have been had the injury occurred to one of Owens' truck drivers because of a defective truck furnished by Owens while he was hauling the equipment to the job site. There is no question of any nondelegable duty as the factors for the application of that rule are not present.