[No. C050591. Third Dist. Jan. 4, 2007.]

PATRICIA ADKINS INSURANCE AGENCY, INC., et al., Plaintiffs and Appellants, v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY et al., Defendants and Respondents.

**COUNSEL**

Law Offices of Wallace C. Doolittle, Wallace C. Doolittle; and William P. Tedards for Plaintiffs and Appellants.

Orrick, Herrington & Sutcliffe, George A. Yuhas, Sean A. Lincoln and E. Anne Hawkins for Defendants and Respondents.

## Opinion

**DAVIS, Acting P. J.**—In this appeal we conclude that a collection of State Farm insurance companies (State Farm) breached an agreement with their independent contractor agents (the Agents) by imposing trade secret and noncompetition restrictions on certain employees of the Agents. Consequently, we reverse the judgment in which the trial court refused to grant the Agents declaratory and injunctive relief in these respects, and we direct that such relief be granted.

### Background

State Farm solicits and services its products through a nationwide network of agents, including the 17 Agents who comprise the appellants here.

State Farm and the Agents operate pursuant to similar AA3 or AA4 forms of a "State Farm Agent's Agreement" (collectively AA3-4). Under the AA3-4, State Farm agents are "independent contractor[s] for all purposes. As such [they] have full control of [their] daily activities, with the right to exercise independent judgment as to time, place, and manner of soliciting insurance, servicing policyholders, and otherwise carrying out the provisions of" the AA3-4.

Pursuant to section I(L) of the AA3-4, State Farm retains the right to prescribe "all policy forms and provisions; premiums, fees, and charges for insurance; and rules governing the binding, acceptance, renewal, rejection, or cancellation of risks, and adjustment and payment of losses."

The AA3-4 also states that information regarding the names, addresses, and ages of State Farm policyholders, the description and location of insured property, and the expiration or renewal dates of State Farm insurance policies—that come into an agent's possession during an agreement with State Farm—are trade secrets that State Farm wholly owns. Furthermore, the AA3-4 specifies that, for one year following its termination, an agent may not "induce or advise" any State Farm policyholder credited to his or her account at termination "to lapse, surrender, or cancel" coverage, and may not "solicit" any such policyholder to buy any competitive coverage.

Finally, the AA3-4 specifies that it constitutes the complete agreement between State Farm and its agent, and any agreement changes must be in writing and accepted by both.[1]

---

[1] Apparently there is a newer State Farm Agent's Agreement, the AA97. The Agents claim that State Farm has attempted to obtain more control over agents pursuant to this agreement.

As the demands placed on the insurance industry increased over time, State Farm agents began hiring employees to meet those demands. Prior to 1974, State Farm authorized only its agents to bind State Farm to insurance obligations or to advise prospective or existing State Farm policyholders on its behalf.

Beginning in 1974, State Farm authorized the state-licensed employees of agents to act on State Farm's behalf through what was called the "Clerical Employee" agreement (CE). The CE was a three-party agreement between State Farm, the agent, and the agent's employee. Although the CE was termed a "Clerical Employee" agreement, it actually applied to state-licensed insurance sales representatives (1) "employed" by a State Farm agent to assist the agent in marketing and servicing prospective and current policyholders, and (2) "appoint[ed]" by State Farm to act as its "[state-]licensed insurance sales representative."

According to State Farm, a primary purpose of the CE was to define the " 'scope of authority' " that State Farm was granting to agents who, through their CE employees, sought to bind State Farm to risk. The CE was mandatory in the sense that no agent's employee was authorized by State Farm to advise policyholders or to bind risks on State Farm's behalf unless the agent and the employee had accepted the CE.

Under the CE, an agent could "delegate" to his or her CE employee "in-office binding authority on" private passenger motor vehicles, residential risks, and personal property-casualty insurance coverages, as well as authority "to take applications for" personal life and health insurance coverages. Such "delegation" did not diminish the agent's "responsibility for exercise of such authority" within State Farm's rules and the applicable state's laws.

In line with the independent contractor status of State Farm agents under the AA3-4, the CE specified that an agent's CE employee was "not to be considered an employee of State Farm for any purpose at any time." Subject to the agent-delegable authority noted in the preceding paragraph, the State Farm agent was "solely responsible" for the training, direction, supervision and compensation of the CE employee, and for all obligations imposed upon an employer as respects an employee. Under the CE, State Farm was "to

---

None of the Agents in this action have converted to the AA97, and they do not contend here that it is the effort to impose the AA97 itself that breaches the AA3-4.

appoint" the agent-hired CE employee "as [State Farm's] licensed insurance sales representative" and could "terminate th[is] appointment."

In 2000, State Farm decided to replace the CE with a new three-party agreement called the "Licensed Staff Agreement" (LSA).[2]

The LSA is substantively similar or identical to the CE regarding (1) the agent's "employment" of the LSA employee to assist the agent in marketing and servicing; (2) State Farm's "appointment" of that employee as its state-licensed representative; (3) the agent's "delegation" to the LSA employee of "in-office binding authority" over private auto, residential risks, and personal property-casualty insurance coverages, as well as authority "to take applications" for personal life and health insurance coverages; and (4) the agent, not State Farm, being the employer of the LSA employee.

However, the LSA contains three substantive provisions not found in the CE. In the first provision, the LSA recognizes State Farm's expansion into financial services products and specifies that LSA employees may "be involved in activities in connection with" those products. As for the two other provisions, the LSA imposes on the LSA employees, respectively, trade secret and nonsolicitation provisions similar to those in the AA3-4 that apply to State Farm agents.

The Agents sued State Farm for breach of contract and for violation of California's unfair competition statute (Bus. & Prof. Code, § 17200 et seq.) for attempting to apply the LSA. The Agents essentially argue that the LSA asserts control over the Agents' LSA employees in violation of the AA3-4 independent contractor agreement between State Farm and the Agents. In their complaint, the Agents request declaratory and injunctive relief (declaring this assertion of control improper, and enjoining it).

In a prior, unpublished opinion in this case, this court reversed a demurrer judgment in favor of State Farm. (*Patricia Adkins Ins. Agency, Inc. v. State Farm Mutual Automobile Ins. Co.* (Oct. 24, 2002, C039290) [nonpub. opn.] (*Adkins*).) We concluded in part that the Agents stated a claim for breach of contract against State Farm because the LSA added trade secret and noncom-

---

[2] We grant the Agents' motion filed June 21, 2006, to augment the record to include documents filed or lodged in the superior court that were not included in the clerk's transcript on appeal.

petition duties to the Agents' LSA employees in derogation of the Agents' independent contractor rights under the AA3-4.[3] (*Adkins, supra*, C039290.)

After a bench trial, the trial court denied the Agents declaratory and injunctive relief. The court concluded that, as to those Agents who had signed the LSA, "there was no evidence presented that any particular provision of the LSA is currently the source of controversy as to [these Agents] or poses any existing conflict between [these Agents] and State Farm in the operation of the [Agents'] business[es]." As to those Agents who had not signed the LSA, the trial court reasoned that "they are not subject to its terms" and found that they had not shown that State Farm had adversely affected their businesses for failing to sign.

## DISCUSSION

On appeal, the Agents do not raise any issue involving their unfair competition cause of action. Nor do they meaningfully challenge the evidentiary sufficiency of the trial court's factual findings.

Instead, the Agents limit the issue on appeal to one of contractual interpretation: The Agents allege that State Farm's attempt to control the Agents' LSA employees through the LSA violates the AA3-4 contract between State Farm and the Agents. And the Agents focus this allegation on the LSA's trade secret and nonsolicitation provisions.

With the appeal whittled to this issue of contractual interpretation—and no extrinsic evidence introduced at trial regarding competing interpretations— what we said in our prior opinion in reversing State Farm's demurrer retains the same vitality notwithstanding the intervening bench trial. (*Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865–866 [44 Cal.Rptr. 767, 402 P.2d 839]; see Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2005) ¶¶ 8:64 to 8:67.1, pp. 8-28 to 8-29.) We said: "[State Farm does] not reserve the right anywhere in the [AA3-4 independent contractor agreement it has with its agents] to determine the conditions of employment of an agent's employees . . . . The [AA3-4] does not specify that the trade secret and noncompetition duties of the agents apply to the agents' employees. The LSA[] thus adds conditions to the terms of employment of the agents' [LSA] employees that [State Farm] can enforce directly against the [LSA] employees. . . . These derogations of the [Agents'] existing contractual rights [under the AA3-4] are accomplished without the consent of the [Agents], despite their contractual right [under the AA3-4] to insist on

---

[3] It remains true as we stated in our prior opinion, "[a]s this appeal does not raise any issues of class certification, we do not express any view on the subject." (*Adkins, supra*, C039290.)

mutual assent to changes. These seem to us to be adequately stated claims for breach of contract." (*Adkins, supra,* C039290; see *State Farm Fire & Cas. Co. v. Superior Court* (1987) 191 Cal.App.3d 74, 76 [236 Cal.Rptr. 216] [ordinarily when a plaintiff pleads a contract and a controversy concerning the effect of the contract's terms, a cause of action for declaratory relief has been stated].)

At trial, the Agents maintained that State Farm has no authority under the AA3-4 to determine or restrict the employment conditions of the Agents' LSA employees. State Farm responded by noting that under the AA3-4, it "retain[s] the right to prescribe all . . . rules governing the binding, acceptance, renewal, rejection, or cancellation of risks . . . ." State Farm also noted that pursuant to the AA3-4, the Agents have no right to "obligate [State Farm] in any way" except as authorized by the AA3-4, by State Farm's rules and regulations, or by State Farm's written authorization.

State Farm reiterates this theme on appeal, arguing that "[t]here is nothing particularly controversial about the notion that a principal has the right to decide who is authorized to act on its behalf," and that the Agents improperly claim that "only they, and not State Farm, have any say in whether their staff should be authorized to bind State Farm to millions of dollars in insurance obligations."

The trial court agreed with State Farm. Citing *McDonald v. Shell Oil Co.* (1955) 44 Cal.2d 785 [285 P.2d 902], *People v. Grier* (1942) 53 Cal.App.2d Supp. 841 [128 P.2d 207], and *Weary v. Cochran* (6th Cir. 2004) 377 F.3d 522, the trial court explained: "The [AA3-4] confirms that [the Agents] are independent contractors; yet they also, obviously, are agents of State Farm. Any employees of [the] Agents who act on behalf of an Agent . . . are subagents for the purpose of acting on behalf of and binding State Farm to insurance obligations." (See *McDonald, supra,* 44 Cal.2d at p. 790 [one who hires an independent contractor may retain "a broad general power of supervision and control as to the results of the work"]; *Grier, supra,* 53 Cal.App.2d at pp. Supp. 848–849, quoting *Western Indemnity Co. v. Pillsbury* (1916) 172 Cal. 807, 811 [159 P. 721] [where one performs work in which another is beneficially interested, the interested party may exercise over the worker " 'a certain measure of control for a definite and restricted purpose' " and the worker may still be considered an independent contractor]; *Weary, supra,* 377 F.3d at pp. 526–527 [an insurance agent's independent contractor status does not preclude his insurance company from requiring compliance with "legal and ethical rules" it deems necessary, or from requiring a minimal level of clerical staff (as long as the agent controls the hiring and paying of the staff)]; see also Rest.2d Agency (1958) § 14N [independent contractor as agent].)

■    We agree that State Farm may exercise appropriate control over the Agents' LSA employees when those employees act on State Farm's behalf to bind it to insurance obligations. If State Farm has to put its money where the LSA employee's mouth is, then State Farm has authority over the LSA employee in this respect. The AA3-4 gives State Farm this authority in sections I(L) (right to prescribe all rules governing the binding, acceptance, renewal, rejection or cancellation of risks) and I(M) (the Agents may obligate State Farm only pursuant to State Farm authorization), while preserving the Agents' status as independent contractors.

■    The problem for State Farm, however, is that the AA3-4 independent contractor agreement between State Farm and the Agents does not provide State Farm with authority to impose trade secret and nonsolicitation provisions on the Agents' LSA employees. This is because those provisions are outside the realm of binding State Farm to insurance obligations.    ■    One of the most important factors in the definition of "employee" is the employer's ability to control employment opportunities. (See *Simpson v. Ernst & Young* (6th Cir. 1996) 100 F.3d 436, 442; *Nationwide Mut. Ins. Co. v. Darden* (1992) 503 U.S. 318 [117 L.Ed.2d 581, 112 S.Ct. 1344].) The nonsolicitation provision in the LSA directly gives State Farm such control over the Agents' LSA employees, as does the trade secret provision to some extent. Furthermore, the nonsolicitation and trade secret provisions of the AA3-4 apply only to the Agents. Consequently, State Farm asserts too much control over the Agents' LSA employees through these two provisions in the LSA, thereby breaching the AA3-4 independent contractor agreement between State Farm and the Agents.

State Farm levels two counterpunches to this conclusion. In the first blow, State Farm notes that the AA3-4 expressly provides that State Farm policyholder information constitutes trade secrets owned by State Farm. State Farm asserts: "The contractual recognition [in the AA3-4] that State Farm owns trade secrets necessarily carries with it the implicit recognition that State Farm has the right to take steps to protect those trade secrets. The trade secret provisions in the LSA constitute one such reasonable step. It makes no sense to construe the [AA3-4] to confirm State Farm's trade secret rights but to prohibit State Farm from including contractual provisions whose purpose is simply to protect State Farm's rights."

The problem with this argument is that it conflates the AA3-4 and the LSA into one contract, thereby ignoring the distinct statuses of the contracting parties. The AA3-4 is an agreement between only State Farm and the Agents, and it contains the trade secret and nonsolicitation provisions that apply only to the Agents. The AA3-4 defines the Agents as independent contractors. The LSA is an agreement between State Farm, the Agents, and the Agents' LSA

employees. The LSA in effect applies the trade secret and nonsolicitation provisions of the AA3-4 to the LSA employees in a context outside the realm of State Farm's contractual authority over the LSA employees—binding State Farm to insurance obligations. State Farm cannot simply transfer the trade secret and nonsolicitation authority it has over the Agents in the AA3-4 to the Agents' LSA employees via the LSA. State Farm has chosen the independent contractor model for its agents, and there are legal consequences to that choice.

In its second counterpunch, State Farm asserts: "Suppose, for example, a software company hired a programming firm as an independent contractor to develop a new proprietary product. Assume further that this software company provided by contract that the programmer's work constituted a trade secret that would be owned by the software company. Can it be said that this software company would be in breach of this contract if it insisted that the programmer's employees sign an agreement recognizing the software company's trade secrets and promising not to disclose those secrets to third parties? Of course not. Yet, that is precisely what the [Agents] are contending here."

The problem with this example is that the independent contractor there was hired to develop a new proprietary product; i.e., the independent contractor's work on behalf of the hiring software company constituted a trade secret in and of itself. In short, the very task of the independent contractor was a discrete project to create a trade secret. The same cannot be said for the Agents' LSA employees, whose ongoing work on behalf of State Farm, at most, is merely to bind State Farm to insurance obligations. The fact remains that, through the LSA's trade secret and nonsolicitation provisions, State Farm has imposed employment conditions on the Agents' LSA employees that are outside the realm over which State Farm may exercise control over those employees pursuant to the AA3-4: when those employees bind State Farm to insurance obligations.

One final point. Under the LSA, "State Farm can terminate the appointment of [the LSA] Employee as [its state-]licensed representative at any time and for any reason by giving written notice . . . ." The Agents do not specifically dispute the validity of this provision, which mirrors a provision in the prior CE agreements. We caution, however, that State Farm may not use this provision to achieve through the back door what it cannot achieve through the front doors of the trade secret and nonsolicitation provisions in the LSA.

## DISPOSITION

The judgment is reversed. The trial court is directed to enter a judgment (1) declaring that the trade secret and nonsolicitation provisions in the LSA agreements constitute a breach of the AA3-4 agreements between the Agents and State Farm, and (2) enjoining State Farm from imposing these two LSA provisions on the Agents and their LSA employees. The Agents are awarded their cost of appeal.

Morrison, J., and Butz, J., concurred.

A petition for a rehearing was denied February 2, 2007, and respondents' petition for review by the Supreme Court was denied April 18, 2007, S150218. George, C. J., did not participate therein.