KAUFMAN *v.* AMERICAN SURETY COMPANY ET AL.

[No. 13,300. Filed May 29, 1929.]

*Means & Buenting* and *Richard L. Ewbank,* for appellant.

*Emsley W. Johnson, Chester L. Zechiel* and *Fred D. Cunningham,* for appellees.

NICHOLS, J.—It is averred in the complaint herein that on January 1, 1926, and ever since such time, appellee American Surety Company was engaged in insuring against loss through fraud, dishonesty, forgery, theft, embezzlement, wrongful abstraction or willful misapplication of employees, directly or through connivance with others; that appellee Truscon Steel Company, on January 1, 1926, and ever since that time, has been engaged in buying and selling reinforcing steel in Indianapolis, and that while so engaged, it maintained on hand large stocks of steel to be used in construction work, and sold the same to the using public; that on January 1, 1926, while so engaged in business, it had in its employ one Wise, who was, at the time and during all the time herein complained about, engaged as its warehouse superintendent in its warehouse in Indianapolis; that on January 1, 1926, appellee surety company was under a contract with appellee steel company by which such surety company was bound as insurer of such steel company to see such company clear of any obligation which it might incur, up to and including $5,000, because of any fraud, dishonesty, forgery, theft, embezzlement, wrongful abstraction or willful misapplication on the part of said Wise, directly or through connivance with others, while he was employed as such warehouse superintendent, and, by such contract, appellee surety company became bound as surety to pay appellee steel company any and all pecuniary loss, not exceeding $5,000, that the latter might sustain in money or other personal proper-

ty, including all such personal property as was within the care, control or otherwise in the possession or under the jurisdiction of Wise, by any act or acts of fraud, dishonesty, forgery, theft, embezzlement, wrongful abstraction or willful misapplication on the part of any employee, directly or through connivance with others while he was in such employ; that it was agreed between the contracting parties that, as a part of such contract of suretyship, and as a part of the consideration therefor, in case of loss to the steel company in excess of $5,000, and a consequent loss or expense incurred by the surety company under its contract of suretyship, and in case of payment by such surety, and the subsequent recovery from any responsible parties causing the loss for which such payment was made, such recovery should be the property of the surety company and the steel company prorated in the proportion that the amount of payment should bear to the total loss incurred, and that the surety company should become subrogated to the amount of any such obligation paid by it to the rights which the steel company might have against the wrongdoer who caused the loss, and that, under such contract of subrogation, the surety company is now subrogated to any and all rights which the steel company has against the appellant, because of the losses incurred by the steel company, as hereinafter alleged; that the surety company did also become subrogated to any and all rights of the steel company against appellant because of losses sustained as hereinafter alleged, to the amount of money paid by it to the steel company; that between January 1, 1926, and May 19, 1926, Wise was in the employ of the steel company as heretofore alleged; that he and appellant wrongfully and unlawfully converted to their own use and benefit, and against the interests and rights of the steel company, certain property belonging to the steel company and located in its ware-

house, and which property was then under the control, management and jurisdiction of Wise as warehouse superintendent; that during such times appellant and Wise agreed with each other to wrong and cheat the steel company, and to convert its property to the use and benefit of appellant and Wise; that so contracting, agreeing and conspiring and working together, and so wrongfully and illegally conducting themselves, appellant and Wise, in pursuit of their illegal conduct and acts and wrongful motive and intention, did convert to their own use over 200,000 pounds of steel bars, the different kinds and sizes of which are itemized in the complaint, property then belonging to the steel company, which was at the time of the reasonable value of $5,142.71; that, in pursuit of said wrongful acts, Wise did wrongfully and illegally pretend to sell to appellant said property as scrap iron, when, in fact, the same was not scrap iron but a valuable steel product; that said property was, in pursuit of such wrongful intent and for such wrongful purpose, sold for $10 per ton to appellant, when, in fact, it was well worth at the time $50 per ton; that appellant well knew the value thereof and knew that he and Wise were cheating and defrauding the steel company and that he was wrongfully buying such property as scrap iron, when, in fact, it was, as he well knew, good merchantable material and worth $50 per ton; that appellant converted such property to his personal use, to the damage of the Truscon Steel Company of $5,142.70; that thereafter and after the loss to the steel company, it reported such loss to the surety company and demanded payment thereof, up to and including $5,000, of the surety company under the surety contract then existing between the two appellees; that the surety company, under its bonded obligation, did, on November 25, 1926, pay to the steel company $5,000, and then became subrogated to its proportion of the liability

which the steel company had against appellant; that, because of such wrongful acts of appellant, the surety company has suffered loss in the sum of $5,000 and the steel company suffered loss and damage in the net sum of $200.

The surety company prays judgment against appellant for $5,000, and the steel company for $2,000, and against both for all proper relief. Appellant filed an answer in general denial. The cause was submitted to a jury, which returned a verdict for appellee surety company for $3,611, and for appellee steel company for $1,067, from which judgment, after appellant's motion for a new trial was overruled, this appeal, appellant assigning as error the ruling of the court in overruling appellant's motion for a new trial, under which appellant presents the errors hereinafter considered.

We fully agree with appellant's contention that something more than mere suspicion is required to prove allegations of fraud, but it is the law that such fraud may be proved by circumstances as well as by direct proof. And in a civil action it is not the law, as appellant contends, citing *Hiner* v. *State* (1925), 196 Ind. 594, 149 N. E. 168, to sustain his contention, that when circumstances are relied upon they must point surely and unerringly in the direction of guilt. As we view this rule, it is the equivalent of saying that the fraud must be proved beyond a reasonable doubt. While such a rule prevails in a criminal action, as in the Hiner case, it does not apply to a civil action. In *Continental Insurance Co.* v. *Jachnichen* (1887), 110 Ind. 59, 10 N. E. 636, 59 Am. Rep. 194, the action was on a fire insurance policy, to which there was a defense that the plaintiff purposely destroyed the property with intent to defraud the company, and the jury was told that the defendant must establish such defense beyond a reasonable doubt. It was there contended that the

defense relied upon imputed to the plaintiff the crime of arson, and that when a crime is charged whether in a civil or a criminal action, before such defense can prevail, the evidence must be of such weight and certainty as to exclude all reasonable doubt of the truth of the charge. But, after a full discussion of the rule that should prevail, and a statement of its origin and history, the court stated that when a crime is charged, whether it be a civil or a criminal case, the same presumption of innocence attaches in favor of the party assailed, and doubtless the jury should scrutinize the evidence with greater caution before coming to a conclusion in favor of guilt; but then quoting with approval Wharton, Evidence §1246, that, "In civil issues the result should follow the preponderance of the evidence, even though the result imputes a crime." The court then states: "The rule that a preponderance of the evidence is all that is necessary to maintain the affirmative of the issue in a civil case, is not vitiated by directing the attention of the jury to the nature of the issue, and to the presumption of innocence where a crime is charged, nor by reminding them that more evidence is required to create a preponderance and establish guilt over such presumption, than is required where no such presumption obtains. To create a preponderance, the evidence must overcome the opposing presumptions, as well as the opposing evidence." Substantially to the same effect, see *Modern Woodmen, etc.,* v. *Craiger* (1910), 175 Ind. 30, 34, 92 N. E. 113, 93 N. E. 209; *Bissell* v. *Wert* (1871), 35 Ind. 54; *In re Darrow* (1910), 175 Ind. 44, 56, 92 N. E. 369.

Appellant contends that the facts and circumstances in evidence are wholly insufficient to justify an inference that he was engaged in a conspiracy with Wise to defraud appellee steel company. In considering this contention, it must be kept in mind that it

is not for this court to weigh the evidence to determine its preponderance. That was for the jury. We have only to determine whether there was some evidence to sustain the verdict. The evidence covers about 400 pages of the transcript, and there can be nothing gained by an extensive review thereof. Some of the facts which, no doubt, the jury considered were that appellant had been in the junk business in Indianapolis for eighteen years, and was, of course, acquainted with the kind of iron or steel usually sold to a junk yard. His yard was located on South Senate avenue, and appellee steel company had its home plant in Youngstown, Ohio, but had a yard on South Palmer street, in Indianapolis. It was engaged in the manufacture and sale of steel products for use in building construction. Reinforcing bars, which is the material here involved, were kept in its yard in Indianapolis. It had an office in 501 Holliday building, in which was a telephone. Appellant knew appellee Truscon Steel Company and the business in which it was engaged. He also knew Wise, who was in charge of the steel company's yard. From his many years in the junk business, it is evident that he was able to distinguish steel so rusty and deteriorated as to be worthless for re-inforcement purposes, and which was simply junk, from good structural steel. He, together with his two sons, testified that what he purchased of Wise was only junk. But numerous other witnesses testified that the material hauled from the Truscon yards to appellant was good structural steel of lengths varying from ten to twenty feet, and photographs of it in the record show it to be in good condition, and not old junky, rusty, pitted, no-account scrap iron, as appellant and his sons testified. The jury, evidently, did not believe their statement that they purchased only junk. When appellant bought junk from other concerns, he made the checks in payment thereof to the firms from which he

bought, but, in this instance, though knowing, as he did, that the material belonged to the steel company, he made the checks payable to Wise, and when the checks were returned, they were indorsed by Wise personally. These checks, or the money thereon, never reached the steel company. He never at any time called the office with reference to his dealings, though he had a telephone in his office, and a telephone book with the name of the steel company therein. He purchased this steel from Wise for $10 per ton, which was a scrap-iron price, and he and his sons testified that it was but scrap iron and sold it to one Glazier, his nephew, for $20 per ton, who, in turn, sold it to the Delco-Remy Corporation at Anderson for $27 per ton, to be used in the construction of its new plant. The evidence was that such steel was worth $50 per ton. Appellant's testimony was that the steel was paid for as delivered, but a receipt for $300 was produced, dated January 4, 1926, which was for a carload of scrap to be delivered on siding of Truscon Steel Company, to be cut and delivered as appellant desired. There was no check of the date of this receipt, and no evidence that such a car was ever delivered. On the contrary, the evidence is that all of the steel in question was hauled from the Truscon plant to the Kaufman junk yard. Appellant's attempted explanation of the transaction is more confusing than the transaction itself. There is much other evidence similar in character, and containing contradictory statements by appellant and his two sons. The jury heard these statements along with all of the evidence, observed the demeanor of the witnesses on the witness stand, and, from all of the evidence, inferred that there was collusion between appellant and Wise to convert appellee steel company's steel bars, and that they did so convert them. We cannot say that the evidence did not justify the inference.

Presenting that the damages are excessive, appellant

contends that at most appellee steel company could recover but $200 for the reason that, by the averments of the complaint, it was damaged but $200.

It is to be noted that there is a demand in the complaint for damages in the sum of $2,000. At the trial, as appears by the bill of exceptions containing the evidence and proceedings at the trial, appellee steel company made its motion to amend the complaint by changing the amount of damages, from $200 to $2,000 so as to correspond to the proof, which motion was sustained. Appellee says that no such amendment was made, but it is a well-established rule that a complaint may be deemed amended to correspond to the proof. We so deem it.

Appellant next contends that the damages are excessive for the reason that the wrong complained of was that steel of the value of $50 per ton was sold to appellant for $10 per ton thereby entailing a loss of but $40 per ton. But the averments of the complaint are that there was a total loss of the steel because of the conspiracy and wrongful conversion, and that it was worth $50 per ton. It is to be observed that the verdict was not in a total sum of $5,142.71, which was the averred amount of the loss, but for a sum considerably smaller. There was some conflict in the evidence as to the kind of steel converted, appellees' witnesses testifying that it was good structural steel, while appellants testified that there was scrap steel included, the amount of which was not given. This probably accounts for the reduction in the amount of the verdict below the amount claimed; or it may be that the jury used $40 a ton instead of $50 as a basis of computation. It does not appear that the damages were excessive.

We have carefully examined the instructions given; and, as it seems to us, when the instructions are taken

as a whole, the jury was well instructed as to the law. Nothing can be gained by any discussion of them.

Appellant complains of the admission of certain evidence as to the custom in the management of appellee steel company's yard, contending that no evidence of any custom was admissible against appellant without a proper showing that appellant was informed of such custom to show that he acted with knowledge of such custom; but there was no objection to the questions eliciting this evidence of custom that it had not been shown that appellant had knowledge of the custom. The objection went to the familiarity of the witness with the custom. No question, therefore, in this regard, is presented.

Alleged error is also presented as to the competency of witness Thompson to testify that Wise had no authority to make sales from the yard. But there was no error in admitting this evidence. Thompson was the general manager of the Indianapolis plant and was the superior of Wise, and, having testified that he knew Wise's duties, it was competent for Thompson to tell what they were, and as to what they were not. Such testimony would be only a statement of fact, about which, and as to his knowledge, he could be cross-examined. What we have said with reference to the competency of witness Thompson to testify applies with equal force to witness Rubenson, who was the auditor of appellee steel company. He could be cross-examined as to his knowledge, and the extent of his knowledge would control the weight to be given to his testimony. That such evidence is not subject to the objection that it is a mere statement of a conclusion, see *German Fire Ins. Co.* v. *Walker* (1912), 146 S. W. (Tex. Civ. App.) 606; *Kirby Lumber Co.* v. *Chambers* (1906), 41 Texas Civ. App. 632, 95 S. W. 607; *Major* v. *Connor* (1912),

162 Cal. 131, 121 Pac. 371; *Kirby Lumber Co.* v. *Williams* (1913), 159 S. W. (Tex. Civ. App.) 309.

We find no reversible error.

Affirmed.