[Civ. No. 20674. Second Dist., Div. Three. July 7, 1955.]

FRANK KELLOGG, Respondent, v. EDRIS GAYNOR, as Administratrix, etc., Appellant.

DeForrest Home for Appellant.

Louis C. Blau and David L. Mohr for Respondent.

SHINN, P. J.—Defendant Edris Gaynor, as administratrix of the estate of Joseph Gaynor, deceased, appeals from a judgment entered on a verdict rendered in favor of Frank Kellogg, plaintiff, in an action for alleged malpractice of her intestate.

Kellogg sustained injury to his nose in an accident some 23 years before this action was instituted. He underwent slight corrective surgery for a deviation of the right septum, after which he experienced no difficulty in breathing. In 1949, Joseph Gaynor, a medical doctor specializing in plastic surgery, performed corrective surgery on respondent's nose and chin. The purpose of the operation was to narrow the nose, to remove a hump from it, and to accentuate the chin. Because of unsatisfactory results, Dr. Gaynor performed a second operation on respondent's nose in 1951, followed by postoperative aftercare as in the first surgery. Plaintiff remained unsatisfied as to the results on his nose and chin. Dr. Gaynor did not perform a second operation on the chin, having advised plaintiff that it would resume its normal shape after a period of time. The chin was characterized by mobile pieces of cartilage, and the nose, even after the second operation, was concave with a bulbous tip, and the passage of air was impaired. Plaintiff instituted this action shortly after the death of Dr. Gaynor in 1951, his claim having been rejected by defendant.

In the first cause of action plaintiff alleged damage to his nose and in the second cause of action, damage to his chin. Defendant's motion for nonsuit as to the first and second causes of action was denied and her motion for a new trial also was denied.

Appellant contends (1) that the court erred in denying her motion for nonsuit as to the second cause of action and (2) that it was error to refuse her requested instruction that it was to be presumed that Dr. Gaynor exercised due care in rendering his services.

Dr. McDowell, plaintiff's expert, testified that in his opinion

the services were not rendered in a manner consistent with the care and skill usually employed by qualified plastic surgeons in this community. He gave as his reasons for his opinion that too much tissue was removed from the nose, uneven implants had been placed in the chin, and scars placed in improper directions and locations and he stated: ''The results I feel are certainly below the results that you ordinarily expect from a capable plastic surgeon.'' He further testified that further surgery would be recommended, but that good results could not be assured because the condition of plaintiff's nostrils was such that normal passage of air through them could not be guaranteed.

In presenting her first point defendant urges insufficiency of the evidence of negligence in the operation upon the chin. She says: ''It will be noted that Dr. McDowell did not testify to a single act which he considered unskillful or negligent.'' No support for this contention is to be found in defendant's quoted excerpts from *Costa* v. *University of California,* 116 Cal.App.2d 445, 461 [254 P.2d 85], to the effect that the fact that the result of treatment is less favorable than in a great majority of cases may result from individual differences or less favorable circumstances of the case and need not indicate that the treatment was negligently performed, nor in the statement quoted from *Nicholas* v. *Jacobson,* 205 Cal. 577 [271 P. 1057], to the effect that there was in that case no evidence whatever of the commission of any negligent or unskillful act. It was not necessary for plaintiff to produce direct evidence as to the technique used by the doctor nor as to the particular manner in which the surgery was performed. ■ The circumstances of the case were such that in the opinion of experts the results would speak for themselves. They could see what had been done and it was competent for them to base their opinions upon their belief that the work should not have been done as it was done and that a better result would have been reached if the surgeon had employed a standard degree of skill and judgment. If in the opinion of experts the undesired result which they observed would have been avoided if the proper degree of skill, judgment and care had been used, this alone would have been a sufficient reason for an opinion that they were not used. There was sufficient expert testimony on behalf of plaintiff to justify a conclusion that the surgery on the chin was performed in a negligent manner. It was not error

for the court to deny defendant's motion for a nonsuit as to the second cause of action.

Defendant requested and the court refused an instruction reading as follows: "Where a party to an action has died, and therefore is not available to testify in his own behalf, there is a presumption of law that the deceased exercised reasonable care and was not guilty of negligence. A presumption is a form of evidence which the jury is required to consider along with all other evidence in the case, and is to be weighed with the other evidence, and unless it is overcome by contrary evidence would require a verdict in favor of the presumption; that is to say, the presumption that the deceased was not guilty of malpractice." The court was clearly in error in refusing this instruction. ▮ Where a party has died or for some other reason is unable to testify as to his acts which it is claimed were negligently performed, there is a presumption that his acts were performed with a degree of skill and care which was commensurate with his duty, provided that the party claiming the benefit of the presumption has not introduced evidence of conduct wholly irreconcilable with the exercise of due care. In *Westberg* v. *Willde*, 14 Cal.2d 360 [94 P.2d 590] and *Scott* v. *Burke*, 39 Cal.2d 388 [247 P.2d 313], these principles were thoroughly examined and expounded with full citation of authorities. Anything further said on the general subject would be useless repetition.

▮ Plaintiff answers this assignment of error by claiming that the rule has no application in an action against a physician or surgeon for malpractice. No case has been cited and we have found none which tends to support this contention. A physician is entitled to the benefit of the presumption since negligence is a fact to be proved. (*Engelking* v. *Carlson*, 13 Cal.2d 216 [88 P.2d 695]; *Simone* v. *Sabo*, 37 Cal.2d 253, 257, 258 [231 P.2d 19].) It is argued that the question of negligence was one that could have been resolved only through the opinions of experts and it appears to be contended that a mere presumption of the exercise of care should not be accorded the dignity or quality of an expert opinion. But there is a general presumption of the use of the proper degree of care and it applies to all men. It means only that the trier of fact must accept as a fact absence of negligence unless and until evidence of negligence is produced which outweighs the presumption of the exercise of due care. We think there were compelling reasons for application of the

presumption to the facts of the present case. The jury were properly instructed that the results obtained by Dr. Gaynor, considered alone, did not create an inference that he was guilty of malpractice but that the results might be considered by expert witnesses in determining whether he had exercised knowledge and skill in accordance with his duty. Where it was impossible for the defendant to produce evidence with respect to the methods and technique employed in the problem which confronted Dr. Gaynor, to withhold from the defendant the benefit of the presumption would not only have been unreasonable but unjust as well. Application of the presumption was consistent with the testimony of defendant's expert that due care and skill had been employed. There is no merit in the contention that the presumption was inapplicable because it was opposed to the testimony of the plaintiff's expert. Expert testimony was required in order to establish negligence. If plaintiff's expert testimony had not been deemed by the jury to be satisfactory and sufficient, a finding against the claim of negligence would have been required, even though the defendant produced no expert testimony that due care and skill had been employed. This would result from the presumption against negligence. Plaintiff's argument that the problem of weighing a presumption against other types of evidence "inevitably results in creating a morass of confusion and uncertainty in the minds of the jurors" is not a new one. It has been settled in a long line of cases that triers of fact have that problem and must make the best of it. The logical effect of refusal of the instruction was to permit the jury to weigh the evidence as if no presumption of the exercise of due care existed. Refusal of the instruction was clearly erroneous and could not have failed to be prejudicial to the defense.

The judgment is reversed.

Wood (Parker), J., and Vallée, J., concurred.

A petition for a rehearing was denied July 29, 1955, and respondent's petition for a hearing by the Supreme Court was denied September 1, 1955.