[Civ. No. 5697. Fourth Dist. May 28, 1959.]

KENNETH WAYNE JOHNS, a Minor, etc., et al., Appellants, v. JOE WARD et al., Defendants; RAYMOND THOMAS, INC. (a Corporation), Respondent.

*Assigned by Chairman of Judicial Council.

Lawrence W. Young and James C. Janjigian for Appellants.

Hays & Hays and James N. Hays for Respondent.

STONE, J. pro tem.*—This is an appeal by the plaintiffs from a judgment entered upon a jury's verdict for the defendant-respondent Raymond Thomas, Inc., a corporation. The action is one for damages by reason of personal injuries to plaintiff-appellant Kenneth Wayne Johns, who was a child just under 4 years of age at the time of the happening of the accident which gave rise to this action. His mother, Dovie Johns, represented him as his guardian *ad litem* and she also appeared as a party plaintiff along with the boy's father, Coy Johns. The plaintiffs by their complaint allege that the accident was caused by the negligence of the defendant Ward and that at the time he was the servant, employee or agent of defendant-respondent Raymond Thomas, Inc., and defendant May. Respondent Raymond Thomas, Inc., answered denying plaintiffs' allegations of negligence and denied that defendant Ward was the servant, agent or employee of the corporation. The company also affirmatively alleged contributory negligence on the part of the minor plaintiff Kenneth Wayne Johns. The defendant May was served in the action and filed an answer. However, prior to the time of trial plaintiffs moved for a dismissal as to him and the motion was granted. The defendant Ward was served but failed to appear and his default was entered. Thus, the only respondent on this appeal is the Raymond Thomas, Inc. company.

The defendant-respondent Raymond Thomas, Inc., is a corporation engaged in extensive farming operations in Fresno County, raising cotton, alfalfa seed and clover. H. O. May was a licensed labor contractor who hired laborers to do field work. He had hired a work crew the members of which were working on the Thomas Ranch at the time of the accident. The ranch

*Assigned by Chairman of Judicial Council.

corporation hired its own tractor drivers and other permanent employees. From time to time May secured work for his labor crew on other ranches in the vicinity. The parents of the child, Kenneth Wayne Johns, were members of the work crew hired by May, and they were living in a labor camp on the Thomas Ranch. At the time of the accident they were hoeing weeds in a field of clover and their child was sleeping under a pickup truck which belonged to defendant Ward. Ward, who had been hired by May, was not engaged in hoeing weeds but was a hoe filer for the work crew. Ward decided to move his truck forward and before starting the vehicle he told the boy to get out from underneath the truck. There is a conflict in the evidence as to whether the boy heard the remarks or continued to sleep until the motor of the vehicle was started. In any event, as the truck was driven forward by Ward the youngster was struck on the head.

One of the principal issues is the relationship between respondent ranch corporation and Ward, the driver of the truck. The ranch corporation furnished cabins, together with electricity and water, in which the workers hired by May were housed. For each person working on the ranch furnished by May the Thomas Company paid him a straight 90 cents an hour. May in turn paid most of these people 80 cents an hour, retaining 10 cents per hour as his fee. There were "row bosses" whom he paid $1.00 per hour. The defendant Ward was originally a crew member receiving 80 cents an hour but when May made him a "hoe filer" Ward's wages were increased to 85 cents. In addition to filing the hoes used by the crew Ward had the duty of collecting garbage at the worker's camp. Some of the workers rode to the fields in his pickup truck and he hauled some of the drinking water for them. Ward found his duties too arduous for the pay he was receiving and requested a raise to 90 cents an hour, which request May granted. Thus, May paid to Ward the entire 90 cents paid by the respondent ranch corporation. The company also paid May the Social Security which became due by reason of the wages paid the laborers hired by him, and paid a bookkeeper to maintain the Social Security records. May, however, carried Workmen's Compensation Insurance on the workers.

Appellants' first contention is, "Unless there was a fee or commission paid, May cannot be a labor contractor as to Ward." Labor Code, section 1682, subdivision (b), provides:

" 'Farm labor contractor' designates any person who, for a fee, employs workers to render personal services in connection

with the production of any farm products to, for, or under the direction of a third person, or who recruits, solicits, supplies, or hires workers on behalf of an employer engaged in the growing or producing of farm products, and who, for a fee, provides in connection therewith one or more of the following services: furnishes board, lodging, or transportation for such workers; supervises, times, checks, counts, weighs, or otherwise directs or measures their work; or disburses wage payments to such persons.''

And subsection (e) provides: '' 'Fee' shall mean (1) the difference between the amount received by a labor contractor and the amount paid out by him to persons employed to render personal services to, for or under the direction of a third person; (2) any valuable consideration received or to be received by a farm labor contractor for or in connection with any of the services described above, and shall include the difference between any amount received or to be received by him, and the amount paid out by him, for or in connection with the rendering of such services.''

At the time of the accident May had raised Ward's wages to 90 cents an hour, the amount he was receiving from the ranch company. Hence May was not collecting a fee from the wages paid to Ward. ■ The first question is whether the statute must be construed literally as to each individual worker. The ranch corporation paid May 90 cents an hour for all field help supplied by him. It was up to May to complete any job designated for the field workers, which at the time happened to be hoeing out the rows of clover. In order to keep the hoers, whom he paid 80 cents an hour, busy, May had to have a hoe filer. He gave the job to Ward and paid him 85 cents an hour, but later raised his pay to 90 cents because the work was more strenuous than hoeing. A similar situation existed as to row bosses who were acting as ''straw bosses'' for May. He paid them $1.00 per hour, at a loss to himself of 10 cents per hour. Yet, these particular positions were part of the make-up of the entire work crew. Without them the work could not have been accomplished and the members of the crew doing the actual hoeing in the field could not have been kept on the job. Other than the difference in pay all members of the crew enjoyed the same relationship toward May as the man actually using the hoe. The provision of the statute regarding a fee need not be construed literally nor construed separately as to each individual member of the work crew. Whether or not May was a labor contractor must be deter-

mined from the overall activity viewed in the light of the statute. ■ Here, May was operating a field labor crew furnishing the necessary services and transportation to keep the people working, and to accomplish the result intended by everyone concerned. As a labor contractor he was collecting his fee and making his profit from the laborers actually doing the hoeing, but he could not keep them working and collect the fee without the services of a hoe filer and row bosses. They were necessary and integral members of the crew. ■ The licensing statute must be liberally construed according to its purpose, which in this case is to protect the farm laborer from labor contractor abuses. In order to regulate farm labor contractors, the state requires them to secure a license and to furnish a bond. ■ The mere fact that the hoe filer received the exact amount that May received from the ranch corporation does not in and of itself take May out of the classification of labor contractor. The term must be interpreted in the sense in which it is used by the statute.

■ We find nothing to support the assertion that the statute was intended to supplant the well established rules for determining the status of an independent contractor insofar as tort liability is concerned. Nor has any authority been cited to us which indicates that the licensing statute was so intended or that it should be so construed. Therefore, we find no merit in appellants' contention that the court erred in striking the "fee test" from one of their instructions.

Appellants next contend that if control and not the licensing statute is the test for determining the nature of the relationship between the respondent and Ward, then the evidence discloses that Ward was an employee of Thomas Ranch as a matter of law. Appellants cite several instances wherein respondent ranch corporation, through its foreman or superintendent, determined the field in which the crew was to work, ordered the men and women to work in separate crews, inspected work being done, made changes in the manner in which the work was to be performed, and even ordered two cotton pickers off the premises because they placed dirt and debris in the picking sacks. ■ In the case of *McDonald* v. *Shell Oil Co.*, 44 Cal.2d 785 [285 P.2d 902], the court commented upon the various ways in which an owner may exercise control over workmen and the work being performed without changing the relationship from independent contractor to that of employer-employee. At page 790, the court said:

"However, the owner may retain a broad general power of

supervision and control as to the results of the work so as to insure satisfactory performance of the independent contract—including the right to inspect (*Callan* v. *Bull*, 113 Cal. 593, 598-599 [45 P. 1017]), the right to stop the work (*Fay* v. *German General Ben. Soc.*, 163 Cal. 118, 122 [124 P. 844]), the right to make suggestions or recommendations as to details of the work (*S. A. Gerrard Co.* v. *Industrial Acc. Com., supra,* 17 Cal.2d 411, 414 [110 P.2d 377]), the right to prescribe alterations or deviations in the work (*Green* v. *Soule, supra,* 145 Cal. 96, 99-100 [78 P. 337])—without changing the relationship from that of owner and independent contractor or the duties arising from that relationship.''

█ A review of the record reveals a conflict in the evidence concerning the degree of control the ranch exercised over May and Ward, as well as the other members of the field crew. The evidence in this case could be interpreted to support a verdict either way, depending upon the weight given the testimony of different witnesses. Under such a state of the evidence the trial court quite properly submitted the question to the jury. (*Casselman* v. *Hartford Acc. & Indem. Co.*, 36 Cal.App.2d 700, 709 [98 P.2d 539].) █ It follows that a reviewing court may not reverse the verdict of the jury if the record reflects substantial evidence in support of the verdict, even though the reviewing court might have decided the factual question differently in the first instance. (*Berniker* v. *Berniker*, 30 Cal.2d 439, 444 [182 P.2d 557]; *Crawford* v. *Southern Pac. Co.*, 3 Cal.2d 427, 429 [45 P.2d 183].)

█ Appellants next argue that, if the question of the relationship between Ward and the respondent ranch corporation was one of fact to be submitted to the jury, the court erred in not giving the jury instructions on the subject of independent contractor. As respondents point out, the appellants offered no instruction concerning the determination of the independent contractor relationship other than the ''fee test,'' which the court properly struck out. Hence, appellants are in no position to complain because the court did not supply an instruction on the subject on its own motion (*Jones* v. *Bayley*, 49 Cal. App.2d 647, 656 [122 P.2d 293]; *Jaeger* v. *Chapman*, 95 Cal. App.2d 520, 525 [213 P.2d 404]; 24 Cal.Jur., p. 802.) Even so, the court did give the following instruction:

''~~You are instructed that~~ a servant or agent is one who is employed to render personal services to his employer, other than in the pursuit of an independent calling, and who in such

service remains entirely under the control and direction of the employer who is called his principal or master; and in this connection you are instructed that the real test by which to determine whether a person is acting as a servant or agent of another is to ascertain whether at the time when the injury, if any, was inflicted, he was subject to such person's orders and control, expressly or impliedly, and was liable to be discharged for disobedience or misconduct.''

This instruction presents the issue conversely, in that it defines the employer-employee relationship rather than defining what constitutes an independent contractor relationship. Yet it does specify subjection to orders and control as the test of the relationship, and in the final analysis this is the test upon which appellants base their contention that Ward was an employee of respondent ranch corporation.

 Appellants cite as error the striking of a portion of one of their proposed instructions on duty of care concerning minors. Insofar as here pertinent, the instruction, with the stricken portion indicated, is as follows:

"The care required must be in proportion to the *known* danger to be avoided and the consequences that might reasonably be anticipated. ~~The presence of a child of the age of four years or thereabouts is in itself a warning requiring the exercise of ordinary care for his safety.~~"

The record reflects no indication of the court's reasons for striking the last sentence of the instruction. It is a correct statement of the law set forth in *Seperman* v. *Lyon Fire Proof Storage Co.*, 97 Cal.App. 654, 657 [275 P. 980], and it is quoted with approval in *Hilyar* v. *Union Ice Co.*, 45 Cal.2d 30, 35, 36 [286 P.2d 21]. The court elected to give the following instruction:

"Ordinarily it is necessary to exercise greater caution for the protection and safety of a young child than for an adult person who possesses normal physical and mental faculties. One dealing with children must anticipate the ordinary behavior of children. The fact that they ~~usually~~ *often* cannot and do not exercise the same ~~degree~~ *amount* of prudence for their own safety as adults, that they often are thoughtless and impulsive, imposes a duty to exercise a proportional vigilance and caution on those dealing with children, and from whose conduct injury to a child might result.''

The instruction given covers the issue in question, the presence of children, by the sentence ''One dealing with children must anticipate the ordinary behavior of children.'' This

phrasing assumes the presence of the child which is what appellants contend was erroneously stricken from their proffered instruction. A party has the right to have the jury instructed on his theory of the case and all of the issues presented. However, he does not have the right to require the court to use his phraseology. The court may modify a tendered instruction, or give an instruction of its own in lieu of a proffered instruction provided the court correctly instructs the jury on each issue covered by the tendered instruction. (See Witkin, California Procedure, vol. 2, § 52-b, page 1780, and cases cited therein.)

 Lastly, the appellants urge that the court erred in refusing to instruct the jury that it is presumed that plaintiff Kenneth Wayne Johns was exercising due care for his own safety. The instruction is based upon Code of Civil Procedure, section 1963, subdivision 4, and reads as follows:

"You are instructed that the presumption is that Kenneth Wayne Johns was at all times exercising due care for his own safety. This presumption is a form of prima facie evidence and will support findings in accordance therewith in the absence of evidence to the contrary. If there is other evidence that conflicts with this presumption it is the jury's duty to weigh that evidence against the presumption, and any evidence that may support the presumption, to determine which if either preponderates. Such deliberations, of course, shall be related to and be in accordance with my instructions on the burden of proof."

The question of due care of the boy, even though he was a few days less than 4 years of age, was an issue as respondent pleaded contributory negligence as a defense and that issue went to the jury as a question of fact. The plaintiff Kenneth Wayne Johns came within the class that the courts have held to be entitled to the benefit of the presumption. This is so not alone by reason of his age but because his mental processes were impaired. The appellants contended at the trial that the boy's mental condition was the result of injuries received in the accident while respondents presented evidence indicating that the child was mentally deficient by reason of a preexisting condition. In any event, because of his age and mental disability the boy clearly came within the class of persons entitled to the benefit of the presumption of due care. Respondent argues that the appellants lost the benefit of the presumption because they produced a witness who testified concerning the manner in which the accident

occurred. Respondent misconceives the rule which deprives a party of the benefit of the presumption. The determination does not turn upon the question of whether or not the party has presented evidence concerning the happening of the accident, but whether he has produced evidence which is irreconcilable with the presumption. The rule is summarized in *Brandelius* v. *City & County of San Francisco,* 47 Cal.2d 729 at page 736 [306 P.2d 432], as follows:

"While under some circumstances there is no room for the presumption where the party whose claimed negligence is at issue either himself testifies or introduces evidence in his own behalf as to his acts and conduct immediately preceding and at the time of the accident (*Speck* v. *Sarver,* 20 Cal.2d 585, 587-588 [128 P.2d 16]; *Zollars* v. *Barber,* 140 Cal.App.2d 502, 506 [295 P.2d 561]), the benefit of the presumption is available if such person be deceased and the testimony of plaintiffs' witnesses respecting the deceased's acts and conduct at the time involved is not 'wholly irreconcilable' with such presumption. (*Gigliotti* v. *Nunes,* 45 Cal.2d 85, 93 [286 P.2d 809].)"

▮▮▮▮ There was only one witness to the accident, an 11-year-old boy, who was 9 years of age when the accident occurred. At the time, he was sitting in an automobile approximately 40 feet from the pickup truck. As might be expected, this young boy's testimony was sketchy, but the important aspect of it, as far as it concerns the point in question, is that his testimony was not irreconcilable with the presumption. Therefore, the instruction embodying the presumption of due care tendered by the appellant-plaintiff should have been given. The issue of contributory negligence or the lack of due care on the part of Kenneth Wayne Johns was factual, and the jurors were entitled to consider as evidence the presumption that the boy was exercising ordinary care. Therefore, the failure to give the requested instruction on the presumption of due care constituted prejudicial error. (*Douglas* v. *Hoff,* 82 Cal.App.2d 82, 85-87 [185 P.2d 607]; *Heffington* v. *Paul,* 152 Cal.App.2d 235, 238 [313 P.2d 157]; *Gigliotti* v. *Nunes,* 45 Cal.2d 85, 93 [286 P.2d 809]; *Johnson* v. *Nicholson,* 159 Cal.App.2d 395, 409 [324 P.2d 307].)

The judgment is reversed.

Griffin, P. J., and Mussell, J., concurred.

A petition for a rehearing was denied June 22 1959, and respondent's petition for a hearing by the Supreme Court was denied July 22, 1959.