[Civ. No. 25319.   Second Dist., Div. Two.   July 31, 1961.]

E. F. JOHNSON et al., Appellants, v. LUCILLE JOAN
POPSO et al., Respondents.

450

Joseph R. Grillo for Appellants.

Gilbert, Thompson & Kelly and Jean Wunderlich for Respondents.

FOX, P. J.—This is an action by Eric Johnson, a minor, for personal injuries, and his father, E. F. Johnson, for medical expenses, sustained when Eric was struck by an automobile driven by defendant Lucille Popso and registered to defendant Michael C. Popso. The jury returned a verdict for defendants and judgment was rendered accordingly. From that judgment plaintiffs appeal.

The accident occurred at or near the ''T'' intersection of Elizabeth and Minnesota Avenues, both ''side'' streets in South Gate. Elizabeth Avenue is a north-south street approxi-

mately 30 feet in width. Minnesota approaches Elizabeth from the west, with its eastern terminus at that street. Mrs. Popso (hereafter referred to as defendant) had been proceeding south on Elizabeth. At or near Minnesota, her car collided with Eric who was apparently crossing the street. Eric was 5 years and 9 months old at the time and nearly 8 at the time of trial. Since the evidence is conflicting on almost every point except those already stated, a summary of the testimony relating to liability will best acquaint the reader with the factual posture of this litigation. It is suggested that a mental map, with north at the top, be kept in mind. Since it is a "T" intersection, there are no eastern corners at Elizabeth and Minnesota, but merely a northwest and a southwest corner.

Nonie LeMert, a witness for plaintiffs, was 11 years old at the time of trial. She testified that at the time of the accident she was standing on the grass between the curb and the sidewalk on the east side of Elizabeth between the first and second houses south of Minnesota. She stated: "I looked over across the street on the corner of Minnesota and I saw about three or four boys standing there and they were throwing stones . . . at a bicycle that was passing. Then I just looked up and looked around, no place in particular, and then when I looked back this boy was in the street and he was walking and he started to run and the car came and hit [him] and [he] bounced up on the right side . . . of the bumper, then [he] bounced up on the hood. I didn't see [him] fall down but it carried [him] awhile." The boy was going toward her when she saw him, apparently from the northwest corner; she didn't know whether he was one of the boys on the corner throwing stones; when she first saw him in the street, walking, he was just a few feet south of the northern curb line of Minnesota and approximately in the center of Elizabeth; he began to run at a point just east of center; she did not see the car stop; she turned around and went home; he had been hit by the front of the car; she didn't know where he had come from; the point of impact was a yard or two south and a few yards east of where she first saw him, about 9 or 10 feet from the east curb; she could not remember whether there were any parked cars at the east curb of Elizabeth. On redirect she said she didn't see him run *into* the street but she saw him running *in* the street, and he was walking before he was running.

Called under section 2055, Code of Civil Procedure, defendant testified that she drove frequently on Elizabeth, was

acquainted with the neighborhood, and had seen many children there before. She knew that the school was two blocks away and that it let out at 3 p. m. She was coasting south on Elizabeth, toward Minnesota, at no more than 15 miles per hour. As she approached the intersection she was looking at it (Minnesota intersected at her right) anticipating traffic. She could see the northwest corner from 25 or 30 feet back and no one was standing on it (contrary to Nonie LeMert's testimony). As she approached the intersection she looked in front of her and saw nothing, and for that reason she did not apply her brakes. *She then crossed the intersection.* At a point about 40 feet past the southern curb line of Minnesota, on the west side of the street, she felt the impact. Her foot was on the gas at the time, for she did not see Eric at all before he was struck. She stopped immediately. No appreciable distance was traveled after she felt "the bump." She first saw the boy when he was rolling to her left, on the street. He came to rest somewhat near a car parked on the east side of the street. She got out of the car, picked him up, and carried him to the house on the southwest corner. She testified that there were cars parked to her left as she approached Minnesota. Her deposition testimony was read at which she asserted that she did not look to the left. In answer she testified that she did look "a little ways," but aside from what her peripheral vision might observe, she did not look to see if anyone were coming from between the cars parked on her left. In her deposition she stated that she moved the car after the police came, that she told the police where she picked up the boy, and that somehow he got in front of the car, but she didn't know where he came from. Her trial testimony was that there were no police at the scene of the accident. She also stated that no skid marks were made by her car.

Examined by her own attorney, defendant said she could see both sides of the street while looking straight ahead. She saw no children nor did she see anyone on a bicycle. Eric was not thrown up on her hood nor did the car carry him. She felt or heard the bump on the left side of her car.

Called to the stand again under section 2055, defendant restated her contention that she didn't feel the bump until after she had crossed Minnesota. Her deposition was then read to her in which she testified that at the time she felt the bump she must have been going less than 15 miles per hour because she was worried about traffic coming out of Minnesota. This would indicate she had not yet crossed Minnesota, sub-

stantiating Nonie's testimony. Defendant merely denied the truth of her deposition testimony.

Testifying in her own behalf, defendant said the accident happened on the right (west) side of the street. She never was on the left-hand side, and she never told anyone that she saw him bounce up on the hood nor that she saw him at all before she felt the bump.

John Paul Jones, the investigating officer, testified that he was called about 3 in the afternoon to investigate the accident. He found a blood spot 10 feet 4 inches west of the east curb line of Elizabeth (on the left side of the street for southbound traffic), and 14 feet 2 inches south of the south curb line of Minnesota (past the intersection for southbound traffic). The car and boy had been moved when he arrived. There were 4 feet of skid marks on the street. They were 16 feet north of the blood spot and barely on the easterly (left) portion of the street. If the skid marks were extended south, the blood spot would be approximately half way between them. Mrs. Popso told him she did not see the boy run into the street until it was too late to stop; that she applied the brakes upon seeing the boy in front of the car but could not stop in time. On cross-examination he stated that he did not know where the point of impact was, nor could he be sure that the skid marks were from defendant's car. His report stated that the boy had come from the east curb, and he had spoken to no eye witness except defendant. On redirect he said that the skid marks were immediately behind the spot where defendant told him the car had come to rest. On recross, he testified that the point of impact, according to his report which was based on the skid marks, blood spot, and what defendant told him, was not within a crosswalk, marked or unmarked.

Betty Lou Silk, called by counsel for plaintiffs, testified that she heard a thump from the street at about 3 p. m., on the date in question. She was inside her home located on the east side of Elizabeth just north of the intersection. She went to her front door and looked toward the street in time to see defendant picking up the boy. Asked whether any cars were parked at the east curb she said, ''Not that I know of . . . because I saw the boy lying in the street.'' She located the auto at the same place as Officer Jones. The boy was lying near the left rear wheel of the car. Defendant carried him around the front of the car. She had a conversation with defendant and defendant said that the boy's hitting the hood of the car made the ''thump.'' On cross-examination she said

she did not hear a squeal of brakes; she could see both corners and saw no one on either corner; and there were no cars parked on the east curb opposite defendant's auto.

Eric's mother testified that Eric was taken to and from school his first two months. She taught him safety rules and how to cross streets. She taught him to look both ways and to be careful when entering the street near parked cars.

Upon this testimony the jury returned a verdict for defendants. Plaintiffs make various assignments of error.

Plaintiffs contend that the court erred in refusing to instruct the jury that Eric was entitled to a presumption of due care. The instruction requested reads: "If you find that Eric Johnson (plaintiff) in this case suffered a loss of memory so as to be unable to testify as to (his) conduct at the time of and immediately preceding the accident here in question, then I instruct you that the law presumes that Eric Johnson in (his) conduct at the time of and immediately preceding the accident was exercising ordinary care and was obeying the law. . . ."[1]

Called to testify in his own behalf, Eric remembered he was hurt in 1956 or 1957; that he was hit by a car; he had come from school; he had been with his friend Gregory. But he could not remember where he was hurt, nor could he remember entering the street, nor did he remember whether Gregory entered the street, nor whether he was walking or running, nor anything about how he was hurt. There is testimony that Eric was unconscious at the hospital and that he sustained a slight to moderate concussion.

It is well settled in this state that those who, because of loss of memory due to the accident are unable to testify as to their activities immediately preceding and at the time of the accident are, with certain qualifications, entitled to an instruction that they are presumed to have exercised reasonable care. (*Douglas* v. *Hoff*, 82 Cal.App.2d 82 [185 P.2d 607]; *Bergman* v. *Bierman*, 138 Cal.App.2d 692 [292 P.2d 623].)

This presumption is evidence, and as such can be weighed

---

[1]The remainder of the instruction reads as follows: "These presumptions are a form of evidence. Each will support a finding in accord with the presumption where there is no proof to the contrary and each will support such a finding in the face of contrary evidence if your judgment so directs after weighing the conflicting evidence.

"When such a conflict exists, it is the jury's duty to weigh the presumption (and any evidence that may support it) against the contrary evidence and to determine which, if either, preponderates. Such deliberations, of course, shall be related to and be in accordance with my instructions on the burden of proof."

together with other evidence. (*Laird* v. *T. W. Mather, Inc.,* 51 Cal.2d 210, 221 [331 P.2d 617].) ▮ But it is equally well settled that one is entitled to the presumption only (1) where the loss of memory is a result of the accident on which he bases his claim (*Simon* v. *City & County of San Francisco,* 79 Cal.App.2d 590, 598 [180 P.2d 393]; *Scott* v. *Burke,* 39 Cal. 2d 388, 394 [247 P.2d 313]; *Ford* v. *Chesley Transportation Co.,* 101 Cal.App.2d 548, 551 [225 P.2d 997]; *Bergman* v. *Bierman,* 138 Cal.App.2d 692 [292 P.2d 623]; *Kumelauskas* v. *Cozzi,* 173 Cal.App.2d 541 [343 P.2d 605]; *Smith* v. *Sugich Co.,* 179 Cal.App.2d 299 [3 Cal.Rptr. 718]); and (2) where the party seeking the benefit of the presumption has not presented testimony which is wholly irreconcilable with the presumption. (*Scott* v. *Burke, supra*; *Kellogg* v. *Gaynor,* 134 Cal.App.2d 288, 291 [285 P.2d 288]; *Johns* v. *Ward,* 170 Cal. App.2d 780, 789-790 [339 P.2d 926]; *Bergman* v. *Bierman, supra*; *Kumelauskas* v. *Cozzi, supra*.) Defendants assert that a partial loss of memory must result from the accident in order to entitle one to the presumption, and they carry the argument no further. The leading case on this point is *Kumelauskas* v. *Cozzi, supra*. Citing some of the cases cited above, the opinion states: "It is the rule that the evidence must show that the loss of memory claimed by a party was caused by the accident to bring the presumption into play." [Citations.] The opinion then says: "It is a question of fact whether plaintiff sustained a loss of memory as a result of the accident." [Citations.] ▮ And again: "The giving of the instructions without qualification was clearly error. . . .*The instructions should have been conditioned on the jury's believing that as a result of the accident plaintiff lost his memory as to his acts and conduct at and immediately before the time of the accident.*" (Emphasis added.) (173 Cal.App.2d at pp. 545-546.) The instruction requested and refused herein is BAJI Number 135-B contained in the 1959 pocket part. It will be noted that it conditions the presumption on the jury's finding that Eric "*suffered a loss of memory so as to be unable to testify as to his conduct*" etc. The instruction seems to follow the *Kumelauskas* case *except that it does not expressly require the jury to find that the loss of memory resulted from the accident.* The words "as a result of the accident" should follow the word "case."[2] The instruc-

---

[2]In a memorandum dated June 20, 1960, The Committee on BAJI recommended to the judges of the superior court that they make this modification of BAJI Number 135-B.

tion requested therefore did not state the law correctly, and it was not error to refuse it.

Plaintiffs next complain of the court's refusal to give the following instruction: ''You are instructed that the plaintiff Eric Johnson and the defendant Lucille Popso were both chargeable only with the exercise of ordinary care consistent with their ages, but a greater amount of such care was required of the defendant at the time of the accident in question by reason of the fact that she was driving and operating an automobile, which is an instrumentality capable of inflicting serious and often fatal injuries upon others using the highway.'' Except for the words, ''consistent with their ages,'' this instruction was originally approved in *Dawson* v. *Lalanne*, 22 Cal.App.2d 314 [70 P.2d 1002], later in *Biggar* v. *Carney*, 181 Cal.App.2d 22 [5 Cal.Rptr. 94], and a refusal to give it was held error, which together with other errors, required a reversal in *Rubalcaba* v. *Sweeney*, 168 Cal.App.2d 1 [335 P.2d 157]. In the last-mentioned case it was stated at pages 5-6: ''This was a correct instruction and ought to have been given. Other instructions spoke only of the obligation resting upon both the plaintiff and the defendant to use ordinary care in their conduct toward each other. It should have been called to the attention of the jury that although the degree of care, that is ordinary care, was the same as to both, nevertheless since defendant was operating an automobile he was chargeable with a duty to use a greater quantum of care by reason of the added danger of the instrumentality he was propelling than the quantum of care required of plaintiff as a pedestrian. (See *Dawson* v. *Lalanne*, 22 Cal.App.2d 314 [70 P.2d 1002]; *Cucinella* v. *Weston Biscuit Co., Inc.*, 42 Cal.2d 71 [265 P.2d 513].) In the *Cucinella* case, although the Supreme Court stated that the instruction here under discussion should have been given in order to point out the disparity of the amount of care required of the operator of an automobile and the amount of care required of a pedestrian, nevertheless in that case there were a number of instructions found by the Supreme Court to minimize the effect of the refusal to give the instruction we are discussing. We find no such minimizing effect in this case from any other instructions that were given. A perusal of the instructions leaves one with the impression that the amount of care required was the same for drivers and pedestrians.'' Such is the case here. The instructions given by the trial court are devoid of any emphasis upon the different quantum of care required

of a driver of a vehicle, an instrumentality capable of inflicting serious bodily harm. Defendants argue that since less care is required of a child than an adult, and the jury was so instructed, it only would have confused the jury to have given them an instruction which would have informed them that a greater amount of care is required of the driver of an automobile in a case involving a child pedestrian. There is no merit to the contention. Each instruction deals with a different party, placing emphasis on certain circumstances which the jury is to consider in determining whether ordinary care was exercised—age, intelligence and experience in the case of the minor and use of a dangerous instrumentality in the case of the driver.

Plaintiffs' next assignment of error relates to the court's refusal to instruct that "If it should appear from the evidence in this case that the defendant driver Lucille Popso, through negligence did not know of plaintiff Eric Johnson's presence on the street, this fact is no excuse for conduct which would be negligent or careless if she had known of the minor's presence." *Rubalcaba* v. *Sweeney*, cited above, held also that it was error to refuse this instruction. The circumstances of that case are not clear from the opinion, except that the defendant testified that he did not see the plaintiff until the moment of impact. The reason expressed in the opinion for holding the refusal to be error was that "We think it easier for a jury to excuse a driver who collides with a pedestrian if they believe that the driver did not see the pedestrian than it is for them to excuse the driver who sees and nevertheless injures the pedestrian." (168 Cal.App.2d at p. 6.) This is no doubt true, and for that reason, when from the evidence adduced it appears to be a question of fact whether the driver should, in the exercise of ordinary care, have seen the pedestrian, this instruction should be given when requested. The testimony outlined above presents such a question of fact. Defendants argue that the substance of this instruction was conveyed to the jury with the instruction that "When there is evidence that one did look, but did not see, that which was in plain sight, . . . it follows that either some part of such evidence is untrue or the person was negligently inattentive." It is argued that this instruction is adequate in that it advises the jury that it can find defendant negligent in not knowing the boy was on the street. But the jury cannot base a finding of negligent inattention on this instruction unless it finds as a matter of fact that the person *did look*. The jury's alternative,

within this instruction, is to disbelieve testimony that the person looked. The instruction requested and refused herein takes up where the ''to look is to see'' instruction leaves off—it would have advised the jury that if the defendant, through negligence, did not know of plaintiff's presence, even though it was because she didn't look, such fact would not excuse conduct which would otherwise be negligent. The refusal to give the instruction was therefore erroneous.

The errors committed relate to the question of defendant's negligence. The conflicts between defendant's testimony at the trial, her deposition testimony, and her statements to the policeman and Mrs. Silk at the scene of the accident, when taken together with the requirement that extra care be exercised when children are around (*Grant* v. *Mueller,* 160 Cal. App.2d 804, 807-808 [325 P.2d 680]) and the inconclusive evidence relative to contributory negligence, persuade us that the errors were of a prejudicial nature. (Cal. Const., art. VI, § 4½; *People* v. *Watson,* 46 Cal.2d 818, 836-837 [299 P.2d 243].) It is therefore not necessary to discuss the rest of the points raised.

The judgment is reversed.

Ashburn, J., and McMurray, J. pro tem.,* concurred.

The petition of respondent Joan Lucille Popso for a hearing by the Supreme Court was denied September 20, 1961.

---

*Assigned by Chairman of Judicial Council.